580 A.2d 405

PRIME PROPERTIES DEVELOPMENT CORPORATION

v.

James BINNS and Mary E. Binns

v.

A. Stanley ADAMS, Jr. and Joan Adams and Prime Properties Investment Corporation and Robert L. Bachich

v.

James CAMPBELL, Individually and d/b/a James Campbell Construction Company.

Appeal of A. Stanley ADAMS and Joan Adams and Prime Properties Investment Corporation.

PRIME PROPERTIES DEVELOPMENT CORPORATION

v.

James E. BINNS and Mary E. Binns

v.

A. Stanley ADAMS, Jr. and Joan Adams and Prime Properties Investment Corporation and Robert L. Bachich

v.

James CAMPBELL, Individually and d/b/a James Campbell Construction Company.

Appeal of Robert L. BACHICH.

Superior Court of Pennsylvania.

Argued April 18, 1990.

Decided Sept. 10, 1990.

494

John J. O'Brien, Philadelphia, for Prime Properties, appellants (at 3086) and for Prime Properties, appellees (at 3087).

Geoffrey Veith, Philadelphia, for Bachich, appellant (at 3087) and for Bachich, appellee (at 3086).

Mark C. Schultz, West Conshohocken, for Campbell Const., appellee.

Before CAVANAUGH, ROWLEY and HUDOCK, JJ.

ROWLEY, Judge:

These are consolidated appeals by A. Stanley and Joan Adams,[1] and Prime Properties Investment Corporation (PPIC) [No. 3086 Philadelphia 1989], and Robert Bachich

---

1. A. Stanley and Joan Adams are principals of Prime Properties Development Corporation and Prime Properties Investment Corporation.

[No. 3087 Philadelphia 1989], from an order which sustained the preliminary objections of additional defendant James Campbell on the basis of the untimely joinder of Campbell, and which dismissed the complaint against him as an additional defendant. The primary issue raised on appeal is whether the judge who sustained the preliminary objections of additional defendant Campbell to the late joinder had the authority to do so where an ex parte order granting permission to join Campbell out of time had been signed by a different judge of equal jurisdiction and no new evidence was presented to the judge who considered the preliminary objections other than the fact that James Campbell objected to his being joined to the action several years after the action had been commenced. For the reasons set forth herein, we affirm.

Prime Properties Development Corporation (Prime Properties) commenced the instant action on February 13, 1986, against James and Mary Binns for failure to pay the full contractual construction cost of a residence which was being built for the Binns by Prime Properties Investment Corporation (PPIC), the predecessor corporation of Prime Properties. On March 11, 1986, the Binns filed an answer and counterclaim alleging faulty workmanship including, but not limited to, design deficiencies, negligent supervision, breach of contract and warranties, and fraud. Allegedly as a result of the faulty workmanship, the Binns averred that "the floors and ceilings belly in the middle," "the floors and ceilings slope," "the walls are cracked and crooked," and "the door jambs are crooked." (Paragraph 23 of Binns counterclaim.)

On April 18, 1986, the Binns filed a third-party complaint against A. Stanley and Joan Adams, principals of PPIC, PPIC itself, John Haley [2], and Robert Bachich, who was the architect for the project. This third party complaint and an amended third-party complaint filed in May, 1987, generally

2. John Haley has been dismissed from the suit pursuant to a stipulation and is not involved in this appeal.

included similar averments as those asserted in the original counterclaim.

Discovery commenced in 1987, and on June 17, 1988, James Campbell, who was the framing subcontractor for the house, was deposed. At that time he was not a party to the action and was not represented by counsel. In December 1988, the Binns' own structural expert who was helping them correct the defects in the house discovered the possibility of faulty framing. On January 19, 1989, appellants filed a Motion for Leave to Join James Campbell as an additional defendant. Inasmuch as James Campbell had no notice of the motion to join him as an additional defendant, this motion was ex parte. Judge Vogel granted the ex parte motion on February 15, 1989. The third-party complaint against James Campbell was filed on March 17, 1989, and James Campbell filed preliminary objections thereto on June 7, 1989. The preliminary objections were sustained by Judge Nicholas on September 28, 1989, and the instant appeals, each raising identical issues, followed.

 Appellants' principal argument is that the general rule that one judge may not overrule another judge of co-equal jurisdiction in the absence of additional circumstances is applicable to the present case and barred Judge Nicholas' order dismissing the third-party complaint joining James Campbell on the basis of untimely joinder after Judge Vogel had already granted permission to join James Campbell out of time. This rule, however, is inapplicable where there has been an ex parte order granting permission to join an additional defendant out of time, and where the late-joined additional defendant files preliminary objections to the complaint joining him out of time.

Appellants have correctly restated the general rule. It is well settled in Pennsylvania that a trial judge may not pass upon the decision of another trial judge of the same court on an interlocutory matter. *Reifinger v. Holiday Inns, Inc.*, 315 Pa.Super. 147, 461 A.2d 839 (1983).

*Buck v. Coldway Food Exp., Inc.,* 383 Pa.Super. 580, 557 A.2d 404 (1989). However, the law is also clear that although a court may grant an ex parte motion to join a third party defendant out of time pursuant to Pa.R.C.P. 2253, the court may reconsider the decision to permit late joinder upon the filing of preliminary objections by the third-party defendant. *McDevitt v. Avis Rent-A-Car Systems, Inc.,* 443 Pa. 49, 277 A.2d 815 (1971).

Rule 2253 provides:

> Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original defendant or an additional defendant later than sixty (60) days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof unless such filing is allowed by the court upon cause shown.

Since in the present case, appellants did not seek to join James Campbell as an additional defendant until more than two and one-half years after they had been served with the additional complaint by the Binns, appellants could join James Campbell as an additional defendant only with leave of court pursuant to Rule 2253. Consequently they filed a motion pursuant to Rule 2253 which Judge Vogel granted.

Where the initial order granting late joinder of a third party pursuant to Rule 2253 is entered ex parte, i.e., without notice to the proposed third party to be joined, the order can be challenged by the late-joined third party upon the filing of preliminary objections to the third-party complaint. The right of the late-joined third party to challenge the late joinder is essential. As the Supreme Court has said:

> This opportunity is especially necessary where the initial order granting joinder is ex parte. The granting of leave to join an additional defendant more than sixty days after plaintiff's original pleading involves an exercise of the court's discretion, *Zakian v. Liljestrand,* 438 Pa. 249, 255, 264 A.2d 638, 641 (1970), and if the proposed additional defendant is not given an opportunity to be heard

at the time of the original exercise of that discretion, he should at least be given a later opportunity to have the decision properly reconsidered. The filing of preliminary objections is a wholly appropriate method for invoking such reconsideration.

*McDevitt, supra,* 443 Pa. at 52, 277 A.2d at 816.

■ In the present case, therefore, when James Campbell filed preliminary objections to the third-party complaint filed against him, he was taking the appropriate steps to challenge his untimely joinder because the filing of the complaint against him was the first time he received knowledge that appellants had attempted to join him as an additional third-party defendant long after the time for joinder of additional parties had passed. By filing the preliminary objections to the late joinder, James Campbell invoked reconsideration of the order granting permission for the untimely joinder.

■ We are aware of no rule which requires that reconsideration of an order granting permission to join a party out of time upon the filing of a preliminary objection to the untimely third-party complaint can only be accomplished by the judge initially permitting the untimely joinder. On the contrary, such a rule may in many instances be impractical or entirely impossible, such as if the judge granting permission to join the party out of time ceases to serve as a judge before the preliminary objections of the late-joined third party defendant are filed, or if the judge making the first order is otherwise unavailable.

Moreover, upon consideration of the preliminary objections of the late-joined third party defendant, the court would have before it the additional information, unavailable to the judge granting the ex parte motion for permission to join the party out of time, that the third party defendant objects to the late joinder. Even though the third party defendant may not be able to provide any additional evidence beyond that which was presented on behalf of the ex parte motion for late joinder, the arguments setting forth

the interests of the late-joined party would be different than those made by the party who had sought the joinder ex parte, and since the court entering the ex parte order did not have the benefit of those arguments, they must be considered additional information put before the judge ruling on the preliminary objections to the late joinder.

■ We therefore hold that where a judge grants an ex parte motion to join a third-party defendant out of time, and upon service of the late-filed third-party complaint, the late-joined party files preliminary objections on the basis of the untimeliness of the joinder, a different judge may rule upon the preliminary objections even if the party filing the preliminary objections does not introduce any additional evidence in the proceeding before the second judge. Preliminary objections are the only available means by which the late-joined party can be heard on the question of late joinder, and since the judge deciding the ex parte motion for late joinder would not have had the benefit of the arguments of the late-joinder party, the judge considering the preliminary objections is therefore not bound by the prior ruling on the ex parte motion.

Having concluded that Judge Nicholas was not bound by Judge Vogel's decision on the ex parte motion for late joinder, we turn now to consideration of the merits of Judge Nicholas' order. Whether there is cause shown for an extension of time within which to join a third-party defendant is a matter within the discretion of the trial court, and we will not reverse the trial court's decision in the absence of an abuse of discretion. *Zakian v. Liljestrand,* 438 Pa. 249, 264 A.2d 638 (1970).

Appellants argue that Judge Nicholas abused his discretion in sustaining the preliminary objections because James Campbell's bald assertion of prejudice cannot preclude his untimely joinder, because untimely joinder of James Campbell was the result of circumstances beyond the control of appellants, discovery is still ongoing, and James Campbell uniquely will know whether his framing of the house was negligent. Appellants' principal argument is that they did

not have the means, until December 1989, when they received the report from the Binns' expert, to know that faulty framing may have been the cause of the problems with the Binns' house.

As the trial court noted, the more than two year delay in appellants' attempt to join James Campbell as an additional defendant is not by itself determinative. *Zakian, supra.* However, the reason asserted by appellants for the cause of the delay, that they did not know that the framing might be the root of the problem, cannot be excused. First, counsel for appellants did not examine the house for the first time until January, 1988, seven months after the amended complaint had been filed against them. By that time, it is true that none of the framing members were visible inasmuch as the advanced stages of construction had covered over the structural frame. However, at no time did appellants ever ask the Binns for permission to bring in the appellants' own expert to remove some of the plastering in order to examine the framing. Instead, they waited until Binns' own expert demolition crew, in December 1989, took the house apart in order to make the essential structural repairs, and advised appellants what they found.

Had there been no indication in the third-party complaint filed by the Binns that anything was wrong with the framing of the house, appellants' plea that they had no idea there was a problem with the framing might be plausible. However, the complaint clearly implicates problems in the framing of the house. Paragraph 17 of the amended complaint against appellants asserts:

17. The carelessness, negligence and failures of performance of defendants A. Stanley Adams, Jr., Prime Properties Investment Corp. and Bachich includes, but are not limited to, the following:

\* \* \* \* \* \*

(b) Failure to plan and specify the use of proper framing materials to ensure adequate support for the structure and materials used therein;

(c) Failure to construct the structure with proper and adequate framing materials and to employ those materials in accordance with accepted standards for construction;

\* \* \* \* \* \*

(e) Failure to order lumber on a timely basis;

\* \* \* \* \* \*

(y) Allowing supporting girders to remain without proper support during the construction of the frame of the house, thereby causing them to weaken and bend, resulting in a "bellying" effect;

In addition, paragraph 18 of the amended third-party complaint provides:

18. Due to the carelessness, negligence and failures of performance of defendants A. Stanley Adams, Jr., Prime Properties Investment Corporation and Bachich in design, planning *and construction* of the residence, the residence was designed, planned *and constructed* in an unprofessional and unworkmanlike manner, which resulted in the following:

(a) The floors and ceilings belly in the middle;

(b) The floors and ceilings slope;

(c) The walls are cracked and crooked;

(d) The door jambs are crooked.

(Emphasis added.)

Appellants argue that even the Binns' own experts did not know that the problem with the house was potentially in the framing until December 1989, and that "the gravamen of the plaintiff's complaint implicated design deficiencies, and the focus of the parties proceeded accordingly." Appellants' brief at 23. As can be seen from the portions of the amended third-party complaint quoted above, although the complaint averred negligence in the design of the house, as appellants perceived, the complaint clearly and unequivocally also averred that the construction was improperly performed, and specifically, that the construction of the framing of the house was inadequate. Therefore, appellants

cannot now be heard to complain that the amended third-party complaint failed to identify faulty framing as one of the causes of the defects in the house when the complaint expressly so averred.

That the amended third-party complaint against appellants specifically charged that there was faulty framing is clear from appellants' own third-party complaint filed against James Campbell. First, they expressly incorporate in the complaint against Campbell those paragraphs from the Binns' complaint against appellants which are quoted above. Moreover, in paragraph 19, they expressly aver against Campbell some of the same facts alleged by the Binns against appellants:

19. The carelessness, negligence and failure to perform by James Campbell, individually and d/b/a/ James Campbell Construction Company, consisted of, but is not limited to, the following:

(a) Failure to provide adequate support for the structure;

(b) Failure to request and/or provide adequate materials to support the structure;

(c) Failure to order framing materials on a timely basis;

\* \* \* \* \* \*

Although appellants find the facts of *Kovalesky v. Esther Williams Swimming Pools*, 345 Pa.Super. 95, 497 A.2d 661 (1985), and *NPW Medical Center v. LS Design Group*, 353 Pa.Super. 341, 509 A.2d 1306 (1986), to be distinguishable, we find them to be closely on point. In *Kovalesky*, the late-joined party had been present at the scene of the accident, and therefore was known to the original defendants. However, the original defendants failed to join the late-joined party for four months because they were confused procedurally. Because the original defendants were aware of the involvement of the additional defendant, the court found no good cause to permit the late joinder of the additional defendant. Similarly, in the present case, the appellants have always known who the framing contractor was, and the amended third-party complaint against the appellants clearly averred problems in the construction of

the framing. Therefore, as in *Kovalesky,* there is not good cause to permit the late joinder, particularly where that joinder is attempted more than two years after the complaint against appellants was filed.

In *NPW Medical Center,* the original complaint alleged problems in the design and installation of a water system, including the averment that the defendants had approved certain pipe "notwithstanding that the incoming water supply to NPW is highly corrosive." Because of the obvious connection between highly corrosive water and the premature corrosion of water pipes, the court refused to permit the late joinder of Pennsylvania Gas and Water Co. as an additional defendant. Likewise in the present case, there is an extremely obvious connection between the framing contractor and the averments in paragraphs 17 and 18 of the Binns' complaint against appellants. Therefore there is not good cause for permitting the late joinder.

 Good cause for late joinder also cannot be supported on the basis that none of the expert reports prior to December 1989 indicated that the framing was a problem. Appellants argue that *Riccobono v. Keystone Helicopter Corp.,* 352 Pa.Super. 186, 507 A.2d 834 (1986), is inapposite. In *Riccobono,* the police and medical reports taken immediately after the accident showed that the driver had alcohol in his blood. Because of these reports, the court refused to permit the late joinder of additional defendants which were taverns from which the driver had purchased alcohol. The court reasoned that armed with the information in the medical and police reports concerning alcohol, the original defendant had failed to act expeditiously to learn the source of the alcohol in the driver's body.

In the present case, it is true that no expert reports revealed faulty framing until December 1989. However, the complaint against appellants averred faulty framing, and appellants never took the initiative to obtain their own expert to determine the extent to which the framing was responsible for the problems. Because appellants simply waited until the Binns' expert advised appellants of what

his investigation showed, and the appellants themselves took no measures to ascertain the nature of their defense, we find *Riccobono* to be applicable and to support the conclusion that there was not good cause to permit the late joinder.

In addition, appellants argue that James Campbell's bald averments of prejudice are insufficient to warrant the dismissal of the third-party complaint against him, since there is no prejudice to him inasmuch as he uniquely knows whether he was negligent in framing the house, since discovery is still ongoing, and since copies of any discovery and photographs obtained during discovery up to this point can be made available to Campbell. However, as the trial court pointed out, the case is already listed on the trial list, and any discovery, whether depositions, including the deposition of James Campbell himself, or photographs, was obtained without the best interests of James Campbell in mind. James Campbell was not represented by counsel when his deposition was taken, and therefore with regard to both his own and other witness' deposition, no one was available to ask questions of the witnesses which would ferret out information most advantageous to James Campbell. With regard to the photographs, the trial court correctly noted that they were taken by parties who are now opponents of Campbell, and because the framing has been repaired, James Campbell cannot go back and obtain his own photographs of the allegedly faulty framing which no longer exists.

In light of the considerations of prejudice resulting to James Campbell if he were now joined as a party, and because there was no "good cause" for appellants failure to join James Campbell as a party within 60 days of the amended complaint against them having been filed, we find no abuse of the trial court's discretion.

Order affirmed.