NOTTINGHAM VILLAGE RETIRE-
MENT CENTER ASSOCIATES,
LP, Appellant

v.

NORTHUMBERLAND     COUNTY
BOARD OF ASSESSMENTS, Shikel-
lamy School District, Point Township,
and Northumberland County.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.
Decided Oct. 19, 2005.

Donald R. Reavey, Harrisburg, for appellant.

Benjamin J. Apfelbaum, Sunbury, for appellee, Shikellamy School District.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Nottingham Village Retirement Center Associates, L.P. (Nottingham) appeals from the October 6, 2004 order of the Northumberland County Court of Common Pleas (trial court) which upheld and declared final the trial court order of April 27, 2004 and found that the Shikellamy School District (School District) was not required to refund any monies to Nottingham under such order. We reverse.

In March of 2003, the Northumberland County Assessor's office sent Nottingham their County/Township tax notice for 2003 regarding Nottingham's property located at 1000 Strawbridge Road in Northumberland (property). The County/Township tax notice set the assessed value of the property at $1,244,275.00 for the Tax Year 2003.[1]

The School District's tax notice was sent out in March of 2003 but is dated July 1, 2003 and used the same assessed value of the property. The School District's tax notice allowed for payment at a 2% discount in July or August, at face value in September or October and at a 10% penalty in November or December. Nottingham appealed the assessment to the Northumberland County Board of Assessment Appeals (Board) stating that the assessed value of the property was excessive. After a hearing before the Board, no change was made to the assessed value of the property.

Nottingham appealed to the trial court. The trial court held a de novo hearing on April 27, 2004. The School District did not attend the hearing and allowed its interests to be represented by Northumberland County (County). At the hearing, Nottingham and County reached an on the record agreement to set the assessed value of the property at $1,153,700.00 retroactively to July 1, 2003. The stipulation of the parties was reduced to the Court's Order of April 27, 2004.[2] The taxing authorities were ordered to refund "any amounts due and owing as a result of payments received under the prior assessment for taxes imposed subsequent to July 1, 2003." Trial Court Order, April 27, 2004 at 1. No mention was made of any exact amounts to be refunded.

By letter of June 10, 2004, Nottingham sought refunds from all the appropriate

1. The County/Township tax notice provided for payment of taxes due at a discounted rate between March 1 and April 30, 2003; at face value between May 1 and June 30, 2003 and at a penalty rate between July 1 and December 31, 2003.

2. The trial court order of April 27, 2004 states in pertinent part as follows:

[U]pon stipulation of the parties, it is hereby ORDERED as follows:
1. The Market Value as of July 1, 2003 is $8,300,000.00.

2. The common level ratio published by the State Tax Equalization Board on July 1, 2003 was 6.95%, which value varies by more than fifteen percent from the established predetermined ratio. The adjusted common level ratio due to the predetermined ratio change is 13.9%.
3. As of July 1, 2003, the assessed value of the subject property is $1,153,700.00.
4. Any amounts due and owing as a result of payments received under the prior assessment for taxes imposed subsequent to July 1, 2003 shall be refunded to Petitioner by the appropriate taxing authority.

taxing authorities due to the difference between the amount of taxes it had paid for the Tax Year 2003 at the higher assessed value and the new Court ordered lower assessed value. Point Township, one of the taxing authorities, promptly proffered the refund it owed in the amount of $1,494.48. The County opted to allow its refund to be reduced to a judgment in the amount of $2,264.37. Only the School District contested that any refund was due under the April 27, 2004 order.

On July 20, 2004, Nottingham filed a petition to determine the amount of refund owed by the School District. On October 6, 2004, the trial court determined that no refund was owed by the School District under the terms of the April 27, 2004 order. Nottingham appealed to our Court. On November 8, 2004, the trial court ordered Nottingham to file a concise statement of matters complained of on appeal. Nottingham complied and on January 5, 2005, the trial court addressed the concise statement of matters complained of on appeal. The trial court found that the School District imposes its yearly taxes on March 31, 2003, prior to the July 1st date the trial court used as the effective date of the order. Therefore, the adjusted assessed value of the property was not applicable to the School District and the School District did not owe Nottingham a refund under the terms of the trial court's order of April 27, 2004. The trial court further found that the adjusted assessed value of the property would provide the tax basis for the School District's 2004 tax.[3]

Before our Court, Nottingham contends that the trial court erred in determining that a tax payer is not entitled to a refund when the assessed value of its real estate is lowered retroactively to a date certain and the tax payer has already paid real estate taxes at the higher assessed value when the taxing body sent out its tax bills. Nottingham also contends that there is sufficient evidence of record for our Court to determine the appropriate amount to be refunded, should a refund be due.

■ Our review is limited to whether the trial court's findings are supported by substantial evidence or whether there exists an abuse of discretion or an error of law. *841 Associates v. Board of Revision,* 674 A.2d 1209 (Pa.Cmwlth.1996).

In the present controversy, the parties agreed that the County's 2003 assessment of Nottingham's property was too high. The parties also stipulated on the record their agreement to set the assessed value of the property at $1,153,700.00 retroactively to July 1, 2003. The taxing authorities were ordered to refund "any amounts due and owing as a result of payments received under the prior assessment for taxes imposed subsequent to July 1, 2003." The School District's tax notice was dated July 1, 2003. There was no date of March 31st anywhere on the School District's tax notice. The only tax notice with a March date on it belonged to the County and Township whose taxes are levied for the calendar year. The County and the Township are not contesting the refund owed.

3. The trial court found in pertinent part as follows:

The parties should have known the date that the Defendants imposed their yearly taxes and should have addressed the situation when fashioning the terms of the agreement. The parties agreed on the terms as stated and understood by the

Court. The Court's understanding and interpretation of the language of the Order mandates tax refunds for taxes imposed after July 1, 2003 and because the Shikellamy School District's yearly tax was imposed on March 31, 2003, the Plaintiff is not entitled to a refund.

Trial Court Opinion, January 5, 2005 at 3.

The School District and the Township chose to be represented by the County during the hearing before the trial court. The County made the agreement on behalf of all of the taxing authorities involved. Therefore, all of the taxing authorities were subject to the stipulation contained in the trial court's order to refund the taxes owed Nottingham due to the incorrect assessment. A stipulation of the parties is subject to contract interpretation. *Cobbs v. Allied Chemical Corp.*, 443 Pa.Super. 386, 661 A.2d 1375 (1995). "In construing a stipulation, the court will adopt the interpretation that is most reasonable and probable, bearing in mind the objects which the parties intended to accomplish through agreement." *Id.* When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. *Com., Department of Transportation v. Manor Mines, Inc.* 523 Pa. 112, 565 A.2d 428 (1989).

■ ▪ The School District contends that it owes no refund as the trial court's order states that the refund is owed for taxes "imposed" after July 1, 2003 and that its tax was "imposed" in March when it sent out the tax bills. There is no definition of "imposed" in the Local Tax Collection Law or the Fourth through Eight Class County Assessment Law. 72 P.S. § 5511.1–5511.42 and 72 P.S. § 5453.101–5453.706.

Nottingham, however, contends that the tax is "imposed" when it becomes due and owing. Nottingham points out that the School District operated on a June 30 fiscal year and the payment of real estate taxes covered the period from July 1 of that year to June 30 of the next year. Thus the School District's 2003 tax bill covered the period of July 1, 2003 through June 30, 2004 and that the tax was, therefore, "imposed" on July 1, 2003.

The trial court found that the plain meaning of the order followed the School District's definition of "imposed". We disagree. The trial court failed to consider the intention of the parties to the agreement. In the present controversy, the School District permitted the County to represent its interests and in doing so was bound by the agreement the County made with Nottingham. The County, whose tax bill was not only sent out in March of 2003, but was actually due prior to July 1st of 2003, understood the agreement contained in the trial court's order to mean that the County owed Nottingham a refund for its overpayment due to the incorrect assessment for the tax year of 2003. Point Township's intention may be determined from the fact that it also refunded the overpayment. The School District was the only taxing authority that took exception to this meaning. However, the School District was not present during the formation of the agreement and, lacking further evidence, its interpretation as to the intention at the time of the formation of the agreement is not only speculative, but contrary to that of the parties who actually made the agreement. Further, the School District has been unable to describe any legal effect its notice of the tax bill sent out in March has prior to the effective date it is due, i.e. July. The School District cannot collect the tax, place a lien on the property or take any other legal action against the tax payers property until July 1st or thereafter. The School District's March 1st tax notice is, therefore, merely a recording of the enactment of the tax which will be effective July 1st. The School District did, therefore, impose its tax for the fiscal year 2003–2004 on July 1, 2003.

Further, the School District's contention that the trial court's order would apply to its 2004 tax year, as the School District "imposes" its taxes before July 1, makes this part of the order meaningless. The stipulation in the trial court's order provid-

ed for a refund by the taxing authorities of any amount owed to Nottingham due to paying the taxes at the higher assessment rate in July of 2003. When reading this in conjunction with the record, the School District's contention must fail. The School District would not owe a refund at all in 2004 since the correct assessment would be used in the next tax notice for the fiscal year 2004–2005 and no overpayment would presumably be made.

The plain meaning of the stipulation requires the School District to pay Nottingham the refund owed as a result of the incorrect assessment. The use of the term "imposed" in this sentence draws its meaning from the agreement and the surrounding facts. *See Cobbs.* The intention of the agreement between the parties is expressed by the people who made the agreement. The County and the Township made the agreement, were parties to the stipulation incorporated into the trial court's order and paid the refund. The School District, who was not present when the agreement was made, cannot now credibly assert what was intended by the people who actually made the agreement. After a review of the record, we must conclude that the School District owes Nottingham the refund.

Next, Nottingham contends that there is enough evidence in the record for our Court to determine the appropriate amount to be refunded. We believe this is correct. The School District does not contest the refund amount Nottingham had requested and a review of the record reveals that the School District's calculations were correct. The School District's 2003–2004 tax bill used the incorrect assessed value of the property ($1,244,275.00) to compute the tax liability of $123,805.36 (1,244,275 ×.0995= 123,805.36). Thus, if the correct assessment ($1,153,700.00) is used in place of the incorrect assessed value (1,153,700.00 ×.0995), a tax liability of $114,793.21 is realized; making the refund due Nottingham $9,012.21 (123,-805.36–114,793.21 = 9,012.21). The School District's calculation of the refund amount being $9,012.21 is correct and that amount is owed by it to Nottingham.

Accordingly, the decision of the trial court is reversed.

AND NOW, this 19th day of October, 2005 the order of the Northumberland County Court of Common Pleas in the above captioned matter is reversed and Shikellamy School District is ordered to pay Nottingham Village Retirement Center Associates a refund in the amount of nine thousand twelve dollars and twenty-one cents ($9,012.21) as a result of the overpayment to the Shikellamy School District for the 2003–2004 tax year.

