Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v.
Malone Middleman.

*Scott Millhouse,* for plaintiff.
*Paul S. Guarnieri,* for defendant.

HERTZBERG, *J.,* November 26, 2012—

## I. Introduction

This is a dispute between two law firms over attorney fees earned in a wrongful death civil litigation settlement. My non-jury verdict was in favor of plaintiff Meyer, Darragh, Buckler, Bebeneck & Eck, P.L.L.C. ("Meyer Darragh") and against defendant Malone Middleman, P.C. ("Malone Middleman) in the amount of $14,721.39. Both Meyer Darragh and Malone Middleman appealed from this verdict, and this opinion sets forth the reasons for the verdict in compliance with Pa.R.A.P. 1925(a).

The attorney fees at the heart of this dispute were earned under a contingent fee agreement. Most personal injury plaintiffs enter into contingent fee agreements with the attorneys they hire, and a significant number of these plaintiffs end up changing attorneys before settlement or trial. If the contingency is met after a change in attorneys, it is important to attorney-client relations and to professional relations between attorneys that the law spell out the circumstances when the new attorney must share the fee with the old attorney. The circumstances in the case at bar warrant a sharing of the contingent fee between attorneys, and I believe this case affords an excellent opportunity to clarify Pennsylvania law on this topic.

## II. Background

On October 6, 2002, Richard A. Eazor died in a motor vehicle accident. In March of 2005 attorney William Weiler, Jr. began representing the Eazor Estate in a wrongful death civil lawsuit under a contingent fee agreement. In November of 2005, attorney Weiler signed an employment agreement with Meyer Darragh, containing these provisions:

.... Any and all legal work performed by Weiler will be deemed work on behalf of the firm.

.... All fees for legal services performed during the term of this agreement by Weiler or on behalf of any client originated by Weiler shall be the property of the firm, regardless of whether the fees are received by the firm during the term of this agreement or after the expiration or termination of it and regardless of

whether Weiler originated the client or matter prior to the effective date of this agreement....the firm will have the sole right to collect fees due to it and Weiler will cooperate in the firm's collection efforts. Further, it is agreed that any and all files relating to legal work performed by Weiler or on behalf of clients originated by Weiler shall be the property of the firm and/or the clients and Weiler shall not remove same from the premises of the firm, absent written permission from the firm or written instructions by the client.

Attorney Scott Millhouse of Meyer Darragh assumed primary responsibility for the Eazor wrongful death litigation, and he was assisted by attorney Weiler, another Meyer Darragh attorney and two paralegals. Attorney Millhouse represented the Eazor Estate during two depositions, and he also drafted a three page proposed Settlement Agreement that he circulated to all opposing counsel.

Mr. Weiler resigned from Meyer Darragh in May of 2007, but before doing so, he agreed that Meyer Darragh would receive two-thirds and Mr. Weiler would receive one-third of the attorney fees generated by the Eazor wrongful death lawsuit. Meyer Darragh believed it would continue to act as lead counsel in the Eazor wrongful death litigation after Mr. Weiler's departure from the firm. However, when Mr. Weiler left Meyer Darragh, he removed the Eazor litigation file without obtaining Meyer Darragh's permission. Then, Mr. Weiler affiliated with Malone Middleman and the Eazor Estate decided it would be represented by Mr. Weiler and his new firm,

Malone Middleman.

Meyer Darrah promptly notified Malone Middleman that it was bound by attorney Weiler's agreement to pay Meyer Darragh two-thirds of the Eazor Estate attorney fees. Malone Middleman responded by denying that Meyer Darragh was owed two thirds of the Eazor attorney fee and "at best, has a quantum meruit claim for actual time expended...." Malone Middleman's contingent fee agreement with the Eazor Estate, which is undated, was not prepared until months after Meyer Darragh notified Malone Middleman of the claim to a portion of the attorney fees. (See proposed stipulated facts/trial documents, defendant's Exhibit E, description of Malone Middleman's legal work, p.4 showing the contingent fee agreement was prepared and sent to J. Richard Eazor on 9/19/2007.) Malone Middleman's contingent fee agreement does not address the payment of Meyer Darragh's attorney fees, and there is nothing in the record to indicate that Malone Middleman advised the Eazor Estate that the Estate could be responsible for paying the attorney fees charged by Meyer Darragh. Ultimately, the Eazor Estate settled the litigation shortly before the commencement of trial for $235,000, with Malone Middleman receiving $67,000 in attorney fees from the Estate. The framework of the settlement proposal drafted by attorney Millhouse of Meyer Darragh was first utilized by the trial judge in a court order that narrowed the issues for trial, and it was also utilized in the ultimate settlement of the litigation.

Meyer Darragh initiated this litigation in September of

2010 naming Malone Middleman and the Eazor Estate Executors as defendants. The amended complaint, filed in March of 2011, asserted a claim against Malone Middleman for breach of contract and a claim against both Malone Midleman and the estate executors for quantum meruit. The parties elected to have the dispute decided by a judge as a "case submitted on stipulated facts" under Pennsylvania Rule of Civil Procedure No. 1031. The parties filed stipulated facts and briefs and I heard oral argument. In its briefs and at oral argument, Meyer Darragh stated that it is not seeking a verdict against the Eazor Estate Executors because the estate paid in full the attorney fee it was charged and owes nothing additional.

On July 24, 2012 I signed a verdict in favor of the Estate Executors and also in favor of Meyer Darragh in the amount of $14,721.39, relative to the claim against Malone Midleman. My verdict is not premised on the breach of contract claim for two-thirds of the attorney fees; it is premised on the quantum meruit[1] claim and consists of Meyer Darragh hourly billings of $10,500.25 and expenses of $4,221.14. Both Malone Middleman and Meyer Darragh timely filed motions for post-trial relief, which I denied. Then, they both also timely filed notices of appeal to the Superior Court and concise statements of errors complained of on appeal. Malone Middleman alleges I made one error, and this will be addressed first.

---

1. "Quantum meruit" allows a party to recover the value of work performed in the absence of a contract to avoid the unjust enrichment of another party. See 17A C.J.S. Contracts §440 at 553 (1963) and *Schenley Distillers Corp. v. Kinsey Distilling Corp.*, 136 F.2d 350 at 352 (3d Cir. 1943). The term "quasi-contract" often is used interchangeably with quantum meruit. *Id.*

## III. Quantum Meruit

Malone Middleman contends that I made an error by basing the $14,721.39 verdict against it on a quantum meruit theory. In disputes over contingent attorney fees, Malone Middleman believes that Pennsylvania law clearly prohibits a predecessor attorney from making a quantum meruit claim against a successor attorney and permits the claim to be made only against the client. If Malone Middleman is correct, Pennsylvania law would seem to encourage lawsuits by attorneys against their former clients since lawsuits against successor attorneys in contingent fee matters would be prohibited. If a predecessor attorney does not wish to sue a former client and Malone Middleman is correct, Pennsylvania law also says whichever attorney has the contingent fee case at the time it is favorably resolved gets the entire contingent fee, regardless of whether a predecessor attorney has done the bulk of the work. I disagree with Malone Middleman's description of Pennsylvania's law on quantum meruit claims in disputes over contingent fees. While inconsistent, Pennsylvania caselaw, summarized below, does not amount to a prohibition of quantum meruit claims made by predecessor attorneys against successor attorneys relative to contingent fees received by the successor attorney.

In 1978, the Superior Court of Pennsylvania decided *Johnson v. Stein*, an attorney fee dispute, in which a client who retained attorney Martin Phillip in a tort case on a contingent fee basis, discharged him in favor of attorney Phillip's associate attorney, who had been terminated from employment with attorney Phillip. 254 Pa. Super. 41,

385 A.2d 514. When attorney Phillip's former associate negotiated a settlement of the tort case, the Superior Court in an opinion authored by Judge Spaeth and joined by five other members of the court, ruled that attorney Phillip could bring a quantum meruit claim against his former associate attorney for the fees earned before the client discharged him.

In 1993, the Superior Court of Pennsylvania decided *Styer v. Hugo*, a complicated attorney fee dispute in which three lawyers worked consecutively on a personal injury case under contingent fee agreements. 422 Pa.Super 262, 619 A.2d 347, affirmed 535 Pa. 610, 637 A.2d 276 (1994). The clients initially retained attorney David Styer, but they became dissatisfied with him since he failed to resolve the case over a period of four years. The clients discharged attorney Styer and retained attorney Christopher Brill, who, with the knowledge of the clients, agreed to divide any attorney fee realized in the case with attorney Styer. Attorney Brill determined that the clients placed an unreasonable value on their claim, and so he suggested they find another attorney. The clients then retained their third attorney, Randall Hugo. Attorney Brill notified the clients that he was not charging them any fee, but attorney Brill did not inform attorney Styer of this or of the fact that he had been discharged, and attorney Brill also did not inform attorney Hugo of the fee sharing agreement he had with attorney Styer. After attorney Hugo achieved a settlement of the case, a three Judge Superior Court Panel ruled attorney Hugo had not been unjustly enriched and therefore owed no part of the

attorney fee to attorney Styer. The Superior Court gave multiple reasons for this ruling. Attorney Styer did not adequately protect his right to compensation by enforcing his right to obtain payment of his fees from the clients. Attorney Styer relied on the fee sharing agreement with attorney Brill, which became a nullity when attorney Brill was discharged and waived his right to any fee. Finally, attorney Styer's efforts contributed minimally to the settlement obtained by attorney Hugo, and attorney Hugo was unaware of attorney Styer's expectation of payment when he took over the case.

In January of 1995 the Superior Court of Pennsylvania decided *Feingold v. Pucello*, a fee dispute that was only between one attorney and a client injured in a motor vehicle accident. 439 Pa. Super. 509, 654 A.2d 1093. Attorney Allen Feingold conducted a prompt investigation and secured an admission of liability from the other driver. But, when attorney Feingold sent the client a written agreement with a contingent fee of 50 percent of the recovery, the client found the fee was too high, told attorney Feingold he could keep his investigative work, and hired other counsel. A three judge Superior Court Panel ruled attorney Feingold had no quantum meruit claim against the client because he did not obtain a written contingent fee agreement as required by the rules of professional conduct and because the client told attorney Feingold to keep his work product. However, in response to attorney Feingold's argument that the admission from the other driver facilitated the settlement because the other driver thereafter could not change his story, the Superior Court

explained that attorney Feingold's quantum meruit claim would more properly be against the successor attorney who may have been assisted by his work. It referenced the 1978 case of *Johnson v. Stein,* supra.

Then, in June of 1995, a different three judge Superior Court Panel in *Fowkes v. Shoemaker,* ruled that a predecessor attorney in a personal injury case had a quantum meruit claim against the clients but not against the successor attorney who received the settlement. 443 Pa. Super. 343, 661 A.2d 877, appeal denied, 544 Pa. 609, 674 A.2d 1072 (1996). Attorney George Fowkes was retained to represent the clients, but they became dissatisfied with him, discharged him and retained attorney Edward Shoemaker.

The contingent fee agreement between attorney Shoemaker and the clients specified that the fee is being reduced from 40 percent to 33 percent because the clients would be responsible for the legal fees of the predecessor attorney. The presence of this provision appears to be the primary reason the Superior Court ruled the quantum meruit claim could only lie against the clients.

In 2002, the Superior Court of Pennsylvania made another ruling involving a quantum meruit claim to attorney fees in *Mager v. Bultena,* 2002 Pa. Super. 85, 797 A.2d 948. Attorney Michael Salmanson was an associate at Mager, Liebenberg and White when a client with a potential Federal False Claims Act qui tam prosecution (see 31 U.S.C.§ 3729, et seq.) was referred to him. The client initially agreed to pay Mager, Liebenberg and

White $200 per hour of services rendered, but after about one year this changed to a contingent fee agreement. The client had considerable experience with qui tam cases and spent one hundred to two hundred hours organizing and reviewing documents and helping draft the complaint. Mager Liebenberg and White provided minimal services to the client after signing the contingent fee agreement, and then the client followed attorney Salmanson when he left that firm and formed Salmanson & Falcao. The client and Salmanson & Falco had a contingent fee agreement that included indemnification of the client by Salmanson and Falcao against the attorney fee claims of Mager, Liebenberg and White. Ultimately, the government became involved in the qui tam case, obtained a settlement and paid the client a relator's fee, thirty percent of which went to Salmanson & Falcao under the contingent fee agreement. Mager, Liebenberg and White sued attorney Salmanson, his firm and the client for compensation for services provided before attorney Salmanson formed Salmanson & Falcao. A three judge panel of the Superior Court ruled that Mager, Liebenberg and White had a quantum meruit claim against the client, and because of the indemnification agreement, against Salmanson & Falcao. As to attorney Salmanson, the Superior Court ruled, based on *Styer v. Hugo*, supra and *Fowkes v. Shoemaker*, supra, that Mager, Liebenberg and White did not have a valid quantum meruit claim.

Finally, on May 30, 2012, the Superior Court of Pennsylvania made its most recent ruling on the topic in *Ruby v. Abington Memorial Hospital,* 2012 Pa. Super. 114, 50 A. 3d 128. Attorney Keith Erbstein, a partner with the

Beasley Firm, brought in a negligence case and the clients signed a contingent fee agreement. A little more than a year later, attorney Erbstein was released from the Beasley Firm and obtained employment with Young, Ricchiuiti, Caldwell & Heller. The clients opted to go with attorney Erbstein and his new firm and they entered into another contingent fee agreement with Young, Ricchiuti, Caldwell & Heller. The negligence claim was settled, and a dispute arose between the two law firms over distribution of the attorney fee. Attorney Erbstein had an agreement to pay the Beasley Firm seventy five percent of the contingent fee when clients opted to continue being represented by him after his release. Therefore, the Beasley Firm made a breach of contract claim against Young, Ricciuti, Caldwell & Heller for seventy-five percent of the attorney fee. A three judge Superior Court Panel ruled that the breach of contract claim against the successor attorney for seventy five percent of the attorney fee was valid, but that the existence of a contract between the parties made a quantum meruit claim inapplicable.

Analyzing these Superior Court decisions, six of the court's Judges first announced the ability of a discharged attorney to make a quantum meruit claim under a contingent fee agreement against a successor attorney in 1978 in *Johnson v. Stein*. Then, in 1993, the court ruled against a predecessor attorney's quantum meruit claim in *Styer v. Hugo*. The court in *Styer v. Hugo* noted that the applicability of quantum meruit "depends on the unique factual circumstances of each case.... [with the]... focus... on whether the defendant has been unjustly enriched."

422 Pa. Super. 262, 268, 619 A.2d 347, 350 (citations omitted). The factual circumstances in the case at hand are far different from those in *Styer v. Hugo* and do establish that defendant Malone Middleman has been unjustly enriched. Meyer Darrgh's work in representing the Eazor Estate in depositions and in establishing a framework for settlement conferred benefits on Malone Middleman. See proposed stipulated facts/trial documents, Exhibit 19. There was an appreciation of such benefits since Malone Middleman was able to get the Eazor Estate's claim settled and receive $67,000 in attorney fees. Finally, "it would be inequitable for defendant to retain the benefit without payment...." (*Id.*) because Malone Middleman was aware Meyer Darragh was looking to Malone Middleman for payment of its fees when it took over the case and Meyer Darragh cannot look to the Eazor Estate because the Estate has already paid Malone Middleman all the attorney fees it owes[2].

The Superior Court in 1995 again acknowledged in *Feingold v. Pucello* that there are appropriate circumstances for claims of quantum meruit by predecessors against successor attorneys. Since then, the Superior Court rulings that quantum meruit was inappropriate all involved cases in which agreements

---

2. "A client should never be made to pay twice." *Malonis v. Harrington*, 442 Mass. 692, 702, 816 N.E. 2d 115,123 (2004). "In a system of professional responsibility that stresses clients' rights, it is incumbent upon the lawyer who enters a contingent fee contract with knowledge of a previous lawyer's work to explain fully any obligation of the client to pay a previous lawyer and explicitly contract away liability for those fees. If this is not done the successor assumes the obligation to pay the first lawyer's fee out of his or her contingent fee." *Galanis v. Lyons & Truitt*, 715 N.E. 2d 858, 863 (Ind. 1999).

were applicable to the disputes. In *Fowkes v. Shoemaker*, there was a contingent fee agreement that called for the clients to be responsible for the predecessor attorney's fee. In *Mager v. Bultena*, there was an agreement by the successor law firm to indemnify the client against the predecessor law firm's attorney fee claim. Last, in *Ruby v. Abington Memorial Hospital*, there was an agreement by the partner of the predecessor law firm to pay it seventy-five percent of the contingent fee.

Applying this concept to the case at hand, if Mr. Weiler's agreement to pay Meyer Darragh two-thirds of the attorney fee is applicable, Meyer Darragh may not make a quantum meruit claim against Malone Middleman. However, if that agreement is inapplicable, Meyer Darragh's quantum meruit claim is valid. In the portion of this opinion that addresses Meyer Darragh's arguments I explain in detail the reasons Mr. Weiler's agreement does not apply to the subject dispute. Since Mr. Weiler's agreement does not apply, and therefore quantum meruit does apply, I made no error in basing my verdict in favor of Meyer Darragh on quantum meruit.

Next, I will address the errors alleged by Meyer Darragh. Meyer Darragh argues that I made three different errors.

## IV. Breach of Contract

Meyer Darragh first claims I made an error by determining that attorney Weiler's agreement to pay Meyer Darragh two-thirds of the Eazor attorney fee is

not binding on Malone Middleman.[3] This argument is premised on *Ruby v. Abington Memorial Hospital* above, the 2012 Superior Court decision that the successor firm owes the predecessor firm seventy-five percent of its contingent fee under a contract between the predecessor firm and a partner whom the clients followed to the successor firm. However, the fact that attorney Weiler was not a Meyer Darragh partner is fatal to this claim. While the Ruby decision acknowledges the partner's clear contractual obligation to the predecessor firm, it also explains in detail that the successor firm is subject to the contract only because payment of seventy-five percent of the fee constitutes "unfinished business" of the dissolved partnership under the Uniform Partnership Act. 15 Pa. C.S. § 8301-8365; 2012 Pa. Super. 114, 50 A.3d 128, 132-136. With attorney Weiler not being a withdrawing partner, the Meyer Darragh partnership was not dissolved and attorney Weiler's obligation to pay Meyer Darragh two-thirds of the Eazor contingent fee is not unfinished partnership business. Since Malone Middleman is not a party to the agreement between attorney Weiler and Meyer Darragh, and Malone Middleman cannot be subject to the agreement under the "unfinished business" doctrine, Meyer Darragh's claim under the contract fails.

## V. Conversion

---

3. Meyer Darragh calculates that it would receive $56,808.80 if Malone Middleman paid the amount owed under the agreement between Meyer Darragh and attorney Weiler. I calculate the amount as $48,887.81 (67,000 x 2/3 = 44,666.67 + 4,221.14 costs = 48,887.81). The difference in amounts results from Meyer Darragh calculating the attorney fee under the contingent fee agreement between Malone Middleman and the Eazor Estate, while my calculation utilizes the lower, actual attorney fee of $67,000 that Malone Middleman reports being paid.

Meyer Darragh next argues that I made an error by not finding Malone Middleman liable for conversion. In June of 2012, Meyer Darragh filed a motion requesting leave to amend its complaint for a second time to add a conversion count. Malone Middleman opposed the amendment on the basis that the statute of limitations on conversion had expired. I agreed with Malone Middleman and therefore denied Meyer Darragh's request for leave to amend. The statute of limitations for Meyer Darragh's conversion claim expires two years after Meyer Darragh, using all reasonable diligence, ascertains that it has been injured. *Kingston Coal Company v. Felton Mining Company, Inc.,* 456 Pa. Super. 270, 690 A.2d 284 (1997), appeal denied 549 Pa. 702, 700 A.2d 441 (1997). On July 23, 2007 Meyer Darragh was aware of the receipt by the Eazor Estate of $15,000 of the settlement proceeds and requested that Malone Middleman pay it two-thirds of the contingent fee. Proposed stipulated facts/trial documents, Exhibit 17. Malone Middleman received the $220,000 balance of the settlement on December 13, 2007, and on February 6, 2008, the Eazor Estate received court approval to disburse the entire $235,000 in settlement proceeds with Malone Middleman receiving allocation of its contingent fee. *Id.,* paragraph no. 37 and Exhibit G. With Meyer Darragh's knowledge in July of 2007 that trial in the Eazor wrongful death case was imminent, reasonable diligence required that Meyer Darragh thereafter check with the court to determine whether there was a verdict and/or settlement. *Id.,* Exhibit 16. Meyer Darragh knew as early as July of 2007 that it was financially harmed by Malone Middleman's failure to pay any part of the contingent fee

from the $15,000 received by the Eazor Estate. Certainly Meyer Darragh, using reasonable diligence by checking with the court, would have determined the full extent of the financial harm by June of 2008, six months after final settlement. Therefore, Meyer Darragh's request to add a conversion count in June of 2012 is well beyond the two year statute of limitations.[4] Accordingly, I made no error by denying Meyer Darragh's motion and finding Malone Middleman is not liable for conversion.

## VI. The Verdict Amount

Meyer Darragh's final argument is that I erred in the verdict amount that I entered under the quantum meruit theory. Meyer Darragh contends that the verdict amount under the quantum meruit theory should have been $17,673.93, rather than the $14,721.39 that I entered. Meyer Darragh contends that $17,673.93 was the stipulated amount of its quantum meruit claim. However, the proposed stipulated facts/trial documents filed by the parties state only that Meyer Darragh "requested payment of $17,673.93...." Paragraph No. 51. I do not view this language as acceptance by Malone Middleman that Meyer Darragh's quantum meruit claim is in the amount of $17,673.93, and further doubt is cast upon there being any stipulated amount by the total for services and expenses in Meyer Darragh's itemized bill being in the amount of $14,843.89. Exhibits 25 and D. Stipulations of the parties are subject to contract interpretation. *Nottingham Village*

---

4. In any event, Meyer Darragh submitted an itemized billing based on hourly rates to the Eazor Estate on April 19, 2010, still more than two years from Meyer Darragh's request to add the conversion count. Proposed Stipulated Facts/Trial Documents, Exhibit D.

*Retirement Center Associates, LP v. Northumberland County Board of Assessments*, 885 A.2d 93 at 96 (Pa. Super. 2005). I interpret the intention of the parties as allowing a court review of Meyer Darragh's itemized bill for a determination of the amount by which Malone Middleman was unjustly enriched. I determined that Malone Middleman was unjustly enriched as to all services and expenses described in Meyer Darragh's itemized bill except for the final two service entries. Since the work described in the two final entries related to the fee dispute between Meyer Darragh and Malone Middleman, I excluded it to arrive at the verdict amount of $14,721.39.[1] This amount being properly determined, I made no error in not entering a $17,673.93 verdict.

---

1. A comparison of the hours of services performed by each of the respective parties with the amount of attorney fees received pursuant to the verdict shows the proportions to be nearly equal. Exclusive of the expenses portion of the verdict, Meyer Darragh is receiving $10,500.25 of the $67,000 in attorney fees paid by the Eazor Estate, which is 15.67 percent. Malone Middleman submitted an itemized bill with 343 hours of service (see Exhibit E to proposed stipulated facts/trial documents) and my verdict awarded Meyer Darragh 71.25 hours of service, which is 17.06 percent of the total hours of services performed by both parties.