621 A.2d 140

**MUTUAL INDUSTRIES, INC., Appellee,**

**v.**

**Herman P. WEINBERG, Appellant**

**v.**

**Erwin L. PINCUS, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1992.

Filed March 1, 1993.

Michael E. Burns, Bethleham, for appellant.

Arthur W. Lefco, Philadelphia, for appellee Pincus.

Before CAVANAUGH, BECK and POPOVICH, JJ.

POPOVICH, Judge.

This case involves an appeal of the May 7, 1992, order sustaining the preliminary objections of the appellee, Erwin L. Pincus, to the motion to join him as an additional defendant by the appellant, Herman P. Weinberg.[1] We affirm.

The record discloses that, on April 23, 1991, Mutual Industries, Inc. filed a complaint for legal malpractice against the appellant. Mutual alleged that it had hired the appellant for legal advice in connection with its purchase of the stock of Nachman Industries, Inc., which was to be accomplished by way of a Stock Purchase Agreement in November, 1983. At this same time, Nachman had a collective bargaining agreement with the International Ladies' Garment Workers' Union (ILGWU) requiring it to make contributions to ILGWU's National Retirement Fund as an employer under the Employee Retirement Income Security Act of 1974.

Also, because of experiencing financial difficulty, Nachman filed a petition in bankruptcy under Chapter 11, which, ultimately, was unsuccessful and resulted in a cessation of its

1. This case involves a final, appealable order. See *Dash v. Wilap Corp.,* 343 Pa.Super. 584, 495 A.2d 950 (1985).

business and exposure to a suit by the trustees of the Fund for "withdrawal liability" pursuant to 29 U.S.C. § 1381(a). A default judgment was entered in favor of the Fund and against Nachman for $247,362.77 plus interest.

When Nachman did not satisfy the judgment, suit was instituted against Mutual as the successor in interest to the Nachman operation. Mutual, in turn, initiated suit against Weinberg on grounds of negligence (for failure to advise it of the "withdrawal liability" consequences to the Stock Purchase Agreement), breach of contract (in not performing legal services in a competent manner resulting in exposing Mutual to liability) and contribution and indemnification (to Mutual by Weinberg if it was found to be liable to the Fund).

On December 16, 1991, Weinberg filed a complaint joining as an additional defendant, Erwin L. Pincus, on the basis that prior to, at the time of, and subsequent to the execution of the Stock Purchase Agreement, Pincus was "active in rendering legal advice to Mutual with respect to the financial condition and operation of Nachman Industries, including the advisability of acquiring the company." Paragraph 6. And any liability flowing from the Stock Purchase Agreement was the sole responsibility of Pincus in "failing to advise Mutual of the potential withdrawal liability which he knew, or should have known existed...." Paragraph 7.

Weinberg denied any liability to Mutual, but Mutual alleged that Weinberg was retained "to represent it in all matters relating to Mutual's conditional purchase of the stock of Nachman Industries, Inc. ... and relied upon Weinberg alone to advise it of risks arising from that transaction." Paragraph 29.

The appellant's petition for joinder of additional defendant Pincus being uncontested, it was granted on November 12, 1991. In an addendum attached thereto, the appellant asserted that Pincus, in testimony given "in connection with the claims against Nachman ... [,] was actively advising Mutual with respect ... to the execution of the Stock Purchase Agreement on November 9, 1983." Paragraph 5. It further averred that the suit was in its early stages, e.g., no deposi-

tions had been taken, thus no party would be prejudiced as a result of the joinder of Pincus as an additional defendant.

On March 6, 1992, Pincus' preliminary objections to the appellant/defendant's complaint were filed alleging (1) no "good cause" was shown by the appellant for the later joinder (in excess of six (6) months) in contravention of Rule 2253), and (2) no "actual loss" having been suffered by Mutual as a result of the appellant's alleged breach of contract or negligence since the underlying action against Mutual had not been concluded. Therefore, dismissal for failure to state a cause of action upon which relief could be granted was sought.

In the memorandum of law of the additional defendant, reference was made to the appellant's failure to "demonstrate" good cause for the delay in joining the additional defendant. The only mention of excuse for the delay was the mere citation of 8 Goodrich–Amram 2d, § 2253:3:1. "Notwithstanding the citation, defendant provide[d] no explanation, reasonable or otherwise, for the delay." Page 2. Further, the additional defendant noted the appellant's discussion of the deposition of Pincus, which was taken with regard to the underlying case against Mutual by the trustees of the union on June 27, 1991, a deposition at which the appellant was present. Yet, argued the additional defendant, "[n]o explanation was given for any delay thereafter for joining the additional defendant." Page 3.

Weinberg filed an answer to the additional defendant's preliminary objections and memorandum of law in which he alleged that approximately five months had elapsed after expiration of the sixty (60) days permissible under Rule 2253. This, he averred, was "necessary to permit an investigation of the underlying facts in the case[ because o]riginally, it was believed that Pincus' involvement was solely related to the filing of a chapter 11 petition with the Bankruptcy Court."

In addition, it originally appeared that Pincus was retained by Nachman Industries and represented Nachman solely. *Fuller development of the facts* showed otherwise. *Through interviews and examination of file documents,* it became clear that Pincus *was in reality retained by Mutual and was paid by Mutual for legal services prior to the acquisi-*

*tion agreement.* In addition, it appears that Pincus conferred extensively with representatives of Mutual regarding the advisability of acquiring Nachman. In these circumstances, a reasonable justification for the delay certainly existed and disclosed facts which would render Pincus alone liable, liable with, or liable over to defendant in the case.

In addition, late joinder in this matter will cause no unfair prejudice to Pincus. No depositions have been taken thus far in the case. No witnesses are known to have died or left the jurisdiction in the intervening period. *The documentary evidence which exists can readily be made available for review by Pincus and/or his counsel.* Accordingly, late joinder is proper in the case.

Page 5 (Emphasis added).

The additional defendant's preliminary objections were granted by order dated April 20, 1992. A motion for reconsideration was filed and denied. This appeal followed and questions the court's sustaining of the preliminary objections of the appellee for the defendant's failure to set forth "good cause" for a late joinder of the appellee as an additional defendant.

█ In this jurisdiction, an additional defendant may be joined no later than sixty (60) days after service upon the original defendant of the initial pleading "unless such filing is allowed by the court upon cause shown." Pa.R.Civ.P. 2253. Whether there is "cause shown" sufficient to allow late joinder of an additional defendant is a matter within the discretion of the court, and its discretion will not be reversed absent an abuse of discretion. *Zakian v. Liljestrand,* 438 Pa. 249, 264 A.2d 638 (1970).

█ Our review of the documents of record reveals that the information which prompted the appellant to seek joinder of the appellee was in *his* (appellant's) possession at all times relevant to the calculation of the time-frame provided for under Rule 2253. Especially is this evidenced from a reading of the appellant's memorandum of law in support of his answer to the appellee's preliminary objections, which acknowledges that *no* depositions had been taken in the case and that

*examination of the file documents,* which were purportedly in the possession of the appellant since they would be made available to the appellee upon request, *played a role in deciding to seek joinder.*

However, no justification is given as to why a "fuller development" of the facts, through "interviews" (of whom we do not know) and examination of the appellant's *own* files, could not have been undertaken sooner or why it took approximately six (6) months after the expiration of the sixty (60) days following the filing of the original complaint to seek joinder.[2] This is fatal. See *DiLauro v. One Bala Avenue Associates,* 357 Pa.Super. 209, 515 A.2d 939 (1986) (One of the criterion that needs to be satisfied to allow later joinder is the petitioner's responsibility to present "some reasonable justification or excuse for the delay").

The appellant's general allegations of "good cause", without any substantiation thereof, undermines his request for the relief requested.[3] Contrast *Riccobono v. Keystone Helecopter,* 352 Pa.Super. 186, 507 A.2d 834 (1986). Therefore, we affirm

---

2. The appellant's contention that the complexity of the case justified a delay in seeking joinder, when examined in the context of the cause sued upon, does not withstand the light of scrutiny.

   The complaint filed by Mutual alleged a straightforward legal malpractice suit grounded upon the Stock Purchase Agreement, *drafted by the appellant,* for the buy-out of Nachman by Mutual. There was no assertion on the part of the appellant that discovery was necessary to uncover the attorney-client relationship between Mutual and the appellee, that Mutual possessed information that was not disclosed until well into the suit concerning the issue of legal representation or at what point he learned of this attorney-client relationship sufficient to trigger in his mind that a potential indemnification defense could be asserted. We are left in the dark on these matters.

   Reference is made that the appellant did not learn of the association between Mutual and the appellee until the deposition of the latter, in a suit involving the trustees of the union, on June 27, 1991. However, even if such were the case, the appellant fails to advise us why it took six (6) months thereafter to seek joinder. See Appellee's Brief at 8.

3. For the first time on appeal, the appellant states that he had to hire an expert to assist him in his efforts to evaluate the appellee's potential exposure to liability. This point, having not been proffered below, is deemed waived for appeal-consideration purposes. See *Vaskie v. West American Insurance Co.,* 383 Pa.Super. 76, 556 A.2d 436, 440–41 (1989).

the court's order for the appellant's failure to present "good cause" to justify the six-month delay in seeking to join the appellee. See Lower Court Opinion at 2.

Order affirmed.