J-S31004-18

2018 PA Super 226

| | | |
|---|---|---|
| JOHN KESSOCK, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONESTOGA TITLE INSURANCE CO. | : | |
| | : | |
| | : | No. 3737 EDA 2017 |
| v. | : | |
| | : | |
| | : | |
| DELANCEY ABSTRACT CORP., | : | |
| JOSEPH HOPKINS, LAW OFFICES OF | : | |
| HOPKINS AND SCHAFKOPF, LLC, | : | |
| SECURITY SEARCH AND ABSTRACT | : | |
| CO., INC. | : | |
| | : | |
| | : | |
| APPEAL OF: JOSEPH HOPKINS AND | : | |
| DELANCEY ABSTRACT CORP. | : | |

Appeal from the Judgment Entered October 12, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2008-17607

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

OPINION BY SHOGAN, J.:                    **FILED AUGUST 09, 2018**

Joseph Hopkins ("Hopkins") and Delancey Abstract Corporation
("Delancey") (collectively, "Appellants") appeal the judgment entered against
them.[1]  We affirm.

---

[1]  Appellants purport to appeal the order denying their motion for post-trial
relief; however, their appeal properly lies from the judgment entered on
October 12, 2017.  ***Tincher v. Omega Flex, Inc.***, 180 A.3d 386, 396 n.7 (Pa.
Super. 2018).  We have amended the caption accordingly.

The trial court entered the following findings of fact:

1. This lawsuit arises from a dispute concerning real property purchased by Plaintiff [John Kessock, Jr.] on or about April 18, 2005, with a physical address of 1333 Beaumont Drive, Gladwyne, PA 19035 (hereinafter, the "Subject Property").

2. Defendant Conestoga was the title insurance underwriter for the Subject Property.

3. Plaintiff's claim stems from a breach of Conestoga's obligations to disclose an easement, as part of its title agency services, when Plaintiff purchased the Subject Property.

4. The recorded easement was discovered by Plaintiff after the completion of the sale of the Subject Property.

5. Thereafter, Plaintiff made a title insurance claim with Conestoga, alleging his claim was worth in excess of $1,000,000. Conestoga denied the insurance claim.

6. Additional Defendant Delancey, a now non-operating Pennsylvania corporate entity, was a title insurance broker.

7. Delancey was the title agent who conducted the closing for the Subject Property.

8. Additional Defendant Hopkins was the principal of Delancey.

9. Security Search and Abstract Company, Inc. ("Security Abstract") was the agent hired by Delancey to actually conduct the title search for the Subject Property.

10. Additional Defendant Hopkins and Schafkopf is a law firm which provided no services related to this case even though Hopkins' name appears in the firm's name.

11. On April 21, 2004, Conestoga entered into an agency agreement with Delancey (the "Agency Agreement").

12. Paragraph 5 of the Agency Agreement provides:

> Agent agrees to be solely liable and indemnify Conestoga for all attorneys' fees, court costs, expenses and loss or

aggregate of losses resulting from shortages in its escrow accounts, fraud, negligence or misconduct of its agents, its officers, or employees in the issuance of title insurance. Agent agrees that Conestoga shall have full control of the determination, procedure and final decision of all losses including the defense thereof. Conestoga agrees to consult with Agent prior to making any final decision on losses on policies issued by Agent.

13.   The Agency Agreement was executed under seal by Hopkins on behalf of Delancey.

14.   Also on April 21, 2004, Hopkins executed a "Guaranty of Payment and Performance" in which Hopkins personally guaranteed Delancey's performance of the Agency Agreement, including "indemnifications and claims of loss as set forth in the Agency Agreement (the "Guaranty").

15. The Guaranty was not executed under seal by Hopkins.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 2–3.

The trial court summarized the procedural history of this case as follows:

On December 16, 2008 Plaintiff John Kessock, Jr. ("Plaintiff") commenced this action by filing a Complaint against Conestoga Title Insurance Co. ("Conestoga") and Security Abstract. On June 12, 2009, an Amended Complaint was filed. Pursuant to an Order dated January 19, 2010, Security Abstract's Preliminary Objections were sustained, and it was dismissed as a party. Conestoga filed a motion to join Delancey, Hopkins, and the Law Offices of Hopkins & Schafkopf, LLC ("Hopkins & Schafkopf") as additional defendants on May 19, 2011. That motion was granted on June 5, 2012, entered of record on June 6, 2012.

On November 9, 2016, a two-day non-jury trial on liability was conducted. In an Order dated November 18, 2016, upon consideration of the evidence presented, and after granting Plaintiff's Motion for Partial Directed Verdict, this [c]ourt ultimately found in favor of Conestoga and against Plaintiff. Further, on the crossclaims asserted by Conestoga against Appellants and Hopkins & Schafkopf, the [c]ourt found in favor of Conestoga and against Delancey and Hopkins only on its claim for attorney's fees

- 3 -

and costs. A compulsory nonsuit/directed verdict was granted to Hopkins & Schafkopf.

An additional two-day non-jury trial on damages was conducted beginning on May 1, 2017 on the singular issue of the assessment of attorney's fees. On August 17, 2017 this [c]ourt issued its decision with seventeen pages of findings of fact and conclusions of law. On October 12, 2017, this [c]ourt denied Appellant[s'] motion for post-trial relief.

On October 17, 2017 Appellants filed a Notice of Appeal to this [c]ourt's October 12, 2017 Order denying Appellant[s'] motion for post-trial relief.[2] On November 6, 2017, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), this [c]ourt Ordered Appellants to file a concise statement of errors complained of on appeal within 21 days.

Appellants filed their Concise Statement of Matters Complained of on Appeal on November 27, 2017. In their Concise Statement, Appellants claim, in more specific detail, that the trial court erred in: (1) allowing the joinder of [A]ppellants, (2) not finding in favor of Appellants, and (3) the [c]ourt's calculation of attorney's fees.

Trial Court Opinion, 12/1/17, at 1–2.

On appeal, Appellants present the following questions for our review:

A. Appellee Conestoga Title Insurance Company filed two successive motions to join Appellants Joseph Hopkins and Delancey Abstract Corporation as additional defendants, filed 431 days and 1,270 days after the joinder period of Pa.R.C.P. No. 2253 expired. And Conestoga's attorneys falsely represented to the Trial Court in both motions that they had just discovered Hopkins' and Delancey's potential liability. Did the Trial Court abuse its discretion in granting the joinder motions?

B. Appellant Joseph Hopkins gave a contract-based personal guaranty that Delancey Abstract Corporation would perform its Agency Agreement with Conestoga and would indemnify

_____

[2] As explained in note 1, the appeal is properly from the entry of judgment.

- 4 -

Conestoga for attorneys' fees if Delancey was negligent in issuing title insurance on Conestoga's behalf. Conestoga did not file its complaint against Hopkins alleging breach of the guaranty until five years after it learned of its contractual claim against Hopkins[.] Did the Trial Court err in concluding that Conestoga's claims against Hopkins were not barred by the statute of limitations?

C. Did the Trial Court err in refusing to reduce the attorneys' fees chargeable to Hopkins and Delancey as unreasonable for any or all of the following reasons:

   a. Conestoga litigated for eight years without ever ascertaining the amount of money in dispute;

   b. Conestoga denied liability and the existence of a contractual relationship between Plaintiff John Kessock and Conestoga for eight years of litigation, only to admit contractual liability at trial;

   c. The time entries of the attorneys admitted into evidence were recorded recollections requiring the testimony of the declarant at trial, but two of the three attorneys did not testify at trial;

   d. Delancey did not agree to indemnify Conestoga for attorneys' fees related to enforcing the Agency Agreement, yet the judgment requires Hopkins and Delancey to indemnify Conestoga for those charges; and

   e. Attorney Mark Clemm charged $175 per hour for his daughter's time before she was admitted to practice law in Pennsylvania, which is the same rate charged after her admission to practice?

Appellants' Brief at 3–4.

Appellants first complain that the trial court abused its discretion by granting Conestoga's untimely motions to join Appellants as additional

defendants. Appellants' Brief at 14. We have explained the joinder procedure

as follows:

> The Pennsylvania Rules of Civil Procedure provide that a writ for joinder shall be filed by the original defendant or an additional defendant no later than sixty (60) days after effecting service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof "unless such filing is allowed by the court upon cause shown." Pa.R.C.P. 2253, **Time for Filing Praecipe or Complaint**. Whether there is sufficient cause to allow late joinder of an additional defendant is a matter within the sound discretion of the trial court. ***Mutual Industries, Inc. v. Weinberg***, 423 Pa.Super. 328, 621 A.2d 140, 143 (1993). Nevertheless, the court "should be guided by the objectives sought to be achieved by use of the additional defendant procedure." ***Zakian v. Liljestrand***, 438 Pa. 249, 256, 264 A.2d 638, 641 (1970). Joinder should be granted when it can "simplify and expedite the disposition of matters involving numerous parties without subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation." ***Id.*** (citations omitted).
>
> When requesting the belated joinder of an additional defendant, a party must show (1) that joinder is based on proper grounds, (2) that some reasonable excuse exists for the delay in commencing joinder proceedings, and (3) that the original plaintiff will not be prejudiced by the late joinder. ***Francisco v. Ford Motor Co.***, 406 Pa.Super. 144, 593 A.2d 1277, 1278 (1991). This Court has also considered the potential for prejudice to the proposed additional defendant. ***Prime Properties Development Corp. v. Binns***, 397 Pa.Super. 492, 580 A.2d 405 (1990). However, limitations on joinder are primarily intended to protect a plaintiff from being unduly delayed in prosecuting his action. ***See Zakian***, 438 Pa. at 256, 264 A.2d at 641[.]

***Lawrence v. Meeker***, 717 A.2d 1046, 1048–1049 (Pa. Super. 1998) (some

internal citations omitted). "The rule permitting the joinder of additional

defendants is to be broadly construed to effectuate its purpose of avoiding

multiple lawsuits by settling in one action all claims arising out of the

- 6 -

transaction or occurrence which gave rise to the plaintiff's complaint." ***202 Island Car Wash, L.P. v. Monridge Const., Inc.***, 913 A.2d 922, 926 (Pa. Super. 2006) (quoting ***Svetz for Svetz v. Land Tool Co.***, 513 A.2d 403, 405 (Pa. Super. 1986) (citation omitted)).

According to Appellants, Conestoga filed its first joinder motion sixteen months after the ninety-day joinder period had closed; it offered no credible justification for the delay in filing the motion; and it misrepresented when Conestoga knew of Appellants' liability under the Agency Agreement and Guaranty. Appellants' Brief at 19. Furthermore, Appellants contend that Conestoga filed its second joinder motion three and one-half years after the joinder period had closed; it offered no credible justification for the delay in filing the motion; and it again misrepresented when Conestoga knew of Appellants' liability. ***Id.*** at 20–21.

In response, Conestoga argues that only the plaintiff in the underlying action, John Kessock, Jr. ("Kessock"), could object to a late joinder on the ground that Conestoga failed to provide a reasonable excuse for its delay. Conestoga's Brief at 10 (citing Pa.R.C.P. 2253(b)). According to Conestoga, although Kessock objected to the first and second proposed joinder complaints due to the lack of reasonable delay, he did not file a post-trial motion or appeal the joinder of Appellants. ***Id.*** at 13–17. As for Appellants, Conestoga recognizes that they could object to joinder on grounds of prejudice. ***Id.*** at 10. Conestoga points out, however, that although Appellants objected to the

first joinder motion, they did not object to the second joinder motion; moreover, Appellants "have neither pled nor proven any aspect of legal prejudice, such as the loss of witnesses, the loss of documents, etc." ***Id.*** at 17. Conestoga explains it could have filed a separate action against Appellants and moved for consolidation of the cases, but that "would have been a waste of judicial time and effort, as the same result would have been accomplished by simply joining [Appellants]." ***Id.*** Conestoga concludes that the trial court properly allowed joinder for "purposes of judicial economy." ***Id.*** at 18.

The trial court entered the following findings of fact relevant to Conestoga's joinder motions:

> 19. Conestoga's first attorney, David Henry, filed a motion to join Delancey, Hopkins, and Hopkins & Schafkopf as additional defendants on May 19, 2011.
>
> 20. That motion was granted on June 5, 2012, entered of record on June 6, 2012.
>
>                        * * *
>
> 24. On November 15, 2012, the [c]ourt . . . provided that Conestoga shall have 30 days from the date of notice of that Order to file a Third Party Complaint to join Additional Defendants. The [c]ourt also noted in its Order that the Order shall be served upon Conestoga's attorney of record, David Henry, Esquire, at his address currently reflected on the docket, 444 N. 4th Street, Suite 101, Philadelphia, PA 19122, and at the address reflected in the Certificate of Service of the second Motion for Reconsideration, 20 N. 3rd Street Suite 301-B, Philadelphia, PA 19106.
>
> 25. This docket reflects that attempted service of the [c]ourt's November 15, 2012 Order upon Conestoga's prior attorney, David Henry, Esquire, at the two above addresses were

returned as undeliverable and provided no forwarding information.

26. Concomitantly with the [c]ourt's unsuccessful attempts at serving notice of the [c]ourt's Orders upon defendant Conestoga's prior attorney, David Henry, Esquire, he became unreachable to Conestoga and ceased communication with Conestoga.

27. Conestoga retained Attorney Mark Clemm, Esquire ("Mr. Clemm") and his firm sometime in late 2012 or early 2013. Mr. Clemm's first entry in this case was March 25, 2013.

28. Conestoga was unaware of the [c]ourt's November 15, 2012 Order granting Conestoga 30 days from the date of notice of that Order to file a Third Party Complaint to join Additional Defendants, until approximately April 2013 after Conestoga retained Mr. Clemm who had reviewed the docket and discovered the [c]ourt's November 15, 2012 Order.

29. On August 2, 2013, Conestoga filed a motion to join Additional Defendants Delancey, Hopkins . . . "nunc pro tunc."

30. Based on the foregoing, on December 11, 203, this [c]ourt granted Conestoga's Motion for Leave to Join Additional Defendants *nunc pro tunc*.

31. On December 17, 2013, Conestoga filed its Joinder Complaint.

32. Neither Delancey nor Hopkins filed Preliminary Objections to their joinder.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 3–5. As evidenced by its order allowing joinder, the trial court accepted Conestoga's justification for the untimely motions, although the trial court did not provide any conclusions of law. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 11–17.

Pursuant to Pa.R.C.P. 2252(a)(4), joinder is permissible if the additional defendant may be liable to the joining party on any cause of action arising out of the transaction upon which the plaintiff's cause of action is based. Here, Kessock's cause of action against Conestoga arose out of the omission of an easement from the title search. Conestoga sought joinder of Appellants based on Appellants' liability for the overlooked easement pursuant to the Agency Agreement and the Guaranty. Joinder Complaint, 12/17/13, at ¶¶ 14–20; Counts I, II, and III. We conclude, therefore, that Conestoga's joinder request was appropriate.

Conestoga justifies its delay in filing the joinder motions as the result of not knowing that Kessock "had a direct claim against [Appellants] until Conestoga discovered the relationship between Hopkins and Kessock and that Hopkins provided legal advice as well as title services (through Delancey) to [Kessock]." Conestoga's Brief at 12. Conestoga also cites its inability to contact counsel, Attorney David Henry, as a cause of the delay in filing the joinder complaint. *Id.* at 13. In contrast, Appellants assert that Conestoga did not have a reasonable excuse for the delayed joinder because it knew at the beginning of the underlying litigation—if not before—that Appellants faced potential liability under the Agency Agreement and the Guaranty. Appellants' Brief at 19. In support of their position, Appellants direct us to several instances in the record demonstrating Conestoga's knowledge of Appellants' potential liability. *Id.* at 21–23.

Upon review, we find support in the record for the trial court's credibility determination that Attorney Henry's unreachability provided an excuse for Conestoga's untimely filing of the **second** joinder motion in August of 2013. Attorney Henry became unreachable after the November 15, 2012 order directing Conestoga to file a joinder complaint. N.T., 5/1/17, at 76, 93–94. Consequently, the court-approved joinder complaint was not filed until new counsel, Attorney Mark Clemm, renewed the joinder motion in August of 2013.

Conversely, we do not find support in the record for the trial court's credibility determination that Conestoga provided a reasonable excuse for its delay in filing the **first** joinder motion in May of 2011. Rather, the record supports Appellants' claim that Conestoga knew of Appellants' potential liability under the Agency Agreement and the Guaranty prior to receiving complete discovery responses from Kessock. Indeed, the trial court found—and our review of the record confirms—that Conestoga and Delancey executed the Agency Agreement on April 21, 2004; therein, Delancey obligated itself to reimburse Conestoga for damages, attorney's fees, and costs arising out of Delancey's negligence. On the same date, Conestoga and Hopkins executed the Guaranty, in which Hopkins personally guaranteed Delancey's performance of the Agency Agreement. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶¶ 11–15, 77. When Kessock filed his lawsuit on December 16, 2008, therefore, Conestoga knew that Appellants could be liable to Conestoga for attorney's fees and damages depending upon the

outcome of Kessock's litigation. Thus, we conclude that Conestoga filed its first joinder motion out of time and lacked a reasonable excuse for the delay.

Nevertheless, we discern no prejudice resulting from the trial court's grant of Conestoga's late joinder motions. The record reveals that, although Kessock objected to Conestoga's untimely joinder motions, it did not challenge the joinder in post-trial motions or an appeal. As for Appellants, they have not argued in this Court, let alone demonstrated, how Conestoga's untimely motions caused them prejudice.

Moreover, in Pennsylvania, "[i]t is well established that before indemnification rights accrue, the party seeking indemnification must pay the claim or verdict damages before obtaining any rights to pursue an indemnification recovery." *Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 767 A.2d 555, 563 (Pa. Super. 2001) (quoting *Beary v. Container General Corp.*, 4, 193 (Pa. Super. 1989)). *See also F.J. Schindler Equipment Company v. Raymond Company*, 418 A.2d 533, 534 (Pa. Super. 1980) ("It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment ... is premature."). Procedurally, when Conestoga moved to join Appellants in May of 2011 and August of 2013, it had not paid any damages to Kessock; therefore, the statute of limitations on its potential claims against Appellants for indemnity on damages paid to a third party had not started to run, let alone expire. *F.J. Schindler*, 418 A.2d

- 12 -

at 534. Consequently, the timing of the joinder motions did not delay any litigation arising out of the indemnification provisions of the Agency Agreement and the Guaranty. Based on the foregoing, we conclude that the trial court did not abuse its discretion in allowing the late joinder of Appellants.

In their second issue, Appellants argue that the four-year statute of limitations set forth in 42 Pa.C.S. § 5525(a) barred Conestoga's claim against Hopkins.[3] Appellants' Brief at 25. According to Appellants:

> Hopkins' duty to guaranty Delancey's performance of the Agency Agreement does not arise under common law. Rather, Hopkins'

---

[3] Appellants do not challenge the timeliness of Conestoga's claim against Delancey, nor could they. Based on its findings of fact, which are supported by the record, the trial court concluded—and we agree—that Conestoga filed its joinder complaint against Delancey within the relevant limitations period:

  11. On April 21, 2004, Conestoga entered into an agency agreement with Delancey (the "Agency Agreement").

  * * *

  13. The Agency Agreement was executed under seal by Hopkins on behalf of Delancey.

  * * *

  85. The statute of limitations for a written contract signed under seal is twenty years. *Osprey Portfolio, LLC v. Izett*, 32 A.3d 793 (Pa. Super. 2011).

  * * *

  87. Therefore, the cross-claim brought by Conestoga against Delancey was clearly within the 20-year statute of limitations.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 2–3, 12–13.

- 13 -

> duty to indemnify Conestoga for its attorneys' fees can arise **only** under his contractual promise to "guaranty the full performance of the Agency Agreement by the Agent".
>
> * * *
>
> Logically, for Conestoga to assert a right to indemnity from Hopkins under the Guaranty, Conestoga must assert a claim against Delancey for breach of the Agency Agreement—that is all that Mr. Hopkins guaranteed. Thus, as a matter of law, Conestoga was required to file its complaint against Mr. Hopkins personally for breach of the Guaranty by December 16, 2012—four years after Kessock served his complaint on Conestoga and Conestoga admits to knowing the identity of Delancey as the agent in that transaction.

Appellants' Brief at 26–27 (citation to Reproduced Record and footnote omitted).

Conestoga does not challenge the application of a four-year statute of limitations; it challenges when the statute began to run. Specifically, Conestoga argues that its claim against Appellants ripened—and the statute began to run—on November 10, 2016, when the trial court determined in Conestoga's cross-claim action that "Delancey was negligent in the issuance of title insurance." Conestoga's Brief at 19. Thus, in Conestoga's view, its December 17, 2013 joinder complaint against Appellants was filed within the statute. We agree.

The applicability of a statute of limitations is a question of law; therefore, our scope of review is plenary, and our standard of review is de novo. **Ash v. Continental Ins. Co.**, 932 A.2d 877, 879 (Pa. 2007). "The trial court's determination will not be disturbed absent an abuse of [its] discretion." **Id.**

"Pennsylvania favors strict application of the statutes of limitation." ***Wachovia Bank, N.A. v. Ferretti***, 935 A.2d 565, 572 (Pa. Super. 2007) (citation omitted). "Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute." ***Id.*** at 572 (citation omitted). A statute of limitations begins to run "from the time the cause of action accrued." 42 Pa.C.S. § 5502(a). "In a contract case, a cause of action accrues when 'there is an existing right to sue forthwith on the breach of contract.'" ***Leedom v. Spano***, 647 A.2d 221, 226 (Pa. Super. 1994) (quoting ***Thorpe v. Schoenbrun***, 195 A.2d 870, 872 (Pa. Super. 1963), and citing 51 Am.Jur.2d, *Limitation of Actions* § 107 (cause of action accrues the moment the right to commence an action comes into existence)).

According to the trial court, Hopkins executed the Guaranty on April 21, 2004, "in which Hopkins personally guaranteed Delancey's performance of the Agency Agreement," and "[t]he Guaranty was not executed under seal." Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶¶ 14, 15. On May 10, 2005, Security Abstract received a search order from Delancey to perform a title search of the Subject Property and negligently failed to disclose a driveway easement. ***Id.*** at ¶ 38. On June 30, 2005, Delancey, as an agent of Conestoga, prepared a title insurance commitment regarding the Subject Property for $1,799,000. ***Id.*** at ¶ 39. Conestoga underwrote a title insurance policy to Kessock for the Subject Property on July 12, 2005. ***Id.*** at ¶ 40. Kessock learned about the undisclosed easement in November of 2005, and

he filed suit against Conestoga and Security Abstract on December 16, 2008.

*Id.* at ¶¶ 16, 41. Our review of the record confirms the trial court's findings. N.T., 11/9/16, at 22, 56, 121–123, 127–130, Exhibits P-9, P-10, P-12, P-13, D-7.

Based on its findings of fact, the trial court entered the following relevant conclusions of law regarding when Conestoga's cause of action against Hopkins arose:

84. The statute of limitations for a written contract not signed under seal is four years. *Packer Soc. Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center*, 635 A.2d 649 (Pa. Super. 1993).

\* \* \*

88. The Guaranty, however, was not signed under seal and is therefore subject to the four-year statute of limitations.

89. In *Leedom v. Spano*, the Superior Court provided guidance on when a cause of action against a guarantor accrues. *Leedom v. Spano*, 647 A.2d 221, 225 (Pa. Super. 2016). In *Leedom*, a mortgagor defaulted on a mortgage note to which a third party acted as surety. *Id.* The Superior Court noted that upon default on a mortgage note by the principal "both the principal and the surety become liable on the original undertaking." Based on that fact, the Court held that the statute of limitations began to run against both the principal and the surety at the time of the mortgagor's default. *Id.* Thus, according to *Leedom*, a cause of action begins to run against a surety at the same time the cause of action begins to run against the principal. Therefore, to determine when the statute of limitations began to run against Hopkins under the Guaranty, we must first determine when the statute of limitations began to run against Delancey under the Agency Agreement.

90. The Agency Agreement provided that Delancey would "be solely liable and indemnify Conestoga for all attorney's

fees…resulting from…fraud, negligence or misconduct of its agents, its officers, or employees in the issuance of title insurance." Claims for indemnification arise only when the party seeking indemnity has made payment on the underlying claim. *McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. 1991). "The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party." *F.J. Schindler Equip. Co. v. Raymond Co.*, 418 A.2d 533, 533 (Pa. Super. 1980)(*citing Builder's Supply Co. v. McCabe*, 77 A.2d 362, 370 (Pa. 1951)[)]. Any action for indemnification before payment of damages to a third party is premature. *Id. See also Beary v. Container Gen. Corp.*, 568 A.2d 190, 193 (Pa. Super. 1989)("It is well established that before indemnification rights accrue, the party seeking indemnification must pay the claim or verdict damages before obtaining any rights to pursue an indemnification[.]).

91. At the earliest, the cause of action for indemnification as set forth in the Agency Agreement did not accrue until the [trial c]ourt determined that Delancey was negligent in its issuance of title insurance and also determined the amount of damages or loss for which Conestoga was liable to Kessock. Under the *Leedom* decision, the cause of action against Hopkins did not accrue until that time as well.

92. The [trial c]ourt did not make its determination on liability until it granted [Kessock's] Motion for a Partial Directed Verdict on November 10, 2016, finding that Delancey was negligent in the issuance of title insurance. Therefore, since a claim for indemnification arises only after verdict damages have been established, the statute of limitations on the claims against Hopkins begin to run no earlier than November 10, 2016.

93. Accordingly, Conestoga's claims against Hopkins were brought well within the four-year statute of limitations.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 12–14.

We have explained that a cause of action against a surety begins to run at the same time the cause of action begins to run against the principal.

***Leedom***, 647 A.2d at 225. Accordingly, we agree with the trial court's conclusion that Conestoga's cause of action against Hopkins arose at the same time its cause of action against Delancey arose. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶ 89. Therefore, as recognized by the trial court, the determining factor is when Conestoga's cause of action against Delancey arose. ***Id.***

> Preliminarily, we note there are two types of indemnity:

> [I]ndemnity claims by a plaintiff against a defendant, where both owe a duty to a third party, are "legitimate" indemnity claims and are new, separate claims for statute of limitations purposes and accrue when the loss occurs. However, indemnity claims by a plaintiff against a defendant based only on the defendant's alleged breach of a contractual duty owed to the plaintiff, where the defendant owes no duty to a third party, are no different from breach of contract claims in which the plaintiff's payments to the third party are the contract damages, and therefore, the ordinary contractual statute of limitations applies, and the claims accrue at breach, not at the time of payment.

R. Gottlieb and B. Natarelli, *Ace in the Hole: Developments Since Ace Securities in Residential Mortgage-backed Securities Litigation*, 72 Bus. Law. 585 (Spring 2017) (citation omitted).

The case at hand involves the second type of indemnification, *i.e.*, Conestoga sought reimbursement from Delancey based only on Delancey's obligations to Conestoga under the Agency Agreement. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶ 90. In Conestoga's words, "The applicable Agency Agreement constituted a binding contract between Conestoga and Delancey Abstract." Joinder Complaint, 12/17/13, at ¶ 35.

This case also involves two components of indemnification arising out of Delancey's negligence: damages payable to a third party and attorney's fees and court costs. Agency Agreement, 4/21/04, at ¶ 5.

Opining that "a claim for indemnification arises only after verdict damages have been established," the trial court concluded that the statute of limitations against Delancey began to run "no earlier than November 10, 2016," when the trial court found "Delancey was negligent in the issuance of title insurance." *Id.* at ¶¶ 91–92. However, as stated above, "before indemnification rights accrue, the party seeking indemnification must pay the claim or verdict damages before obtaining any rights to pursue an indemnification recovery." *Beary*, 568 A.2d at 193; *Chester Carriers*, 767 A.2d at 563. Although the trial court found Conestoga liable to Kessock for breach of contract, it also found that Kessock "failed to present sufficient competent and credible evidence . . . that he suffered any damages pursuant to that breach." Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶ 77, 78. Therefore, Conestoga's indemnification rights against Delancey for damages payable to a third party did not accrue because Conestoga did not pay any damages to Kessock.

As for Conestoga's claim against Delancey for attorney's fees and court costs, it accrued according to the fee-shifting language of the Agency Agreement. The relevant language of the Agency Agreement provides that Delancey would be solely liable to Conestoga for all attorney's fees and court

costs **resulting from** the negligence of Delancey's agents, officers, or employees in the issuance of title insurance. Agency Agreement, 4/21/04, at ¶ 5. Necessarily, in order for Delancey to be liable for attorney's fees and costs **resulting** from its negligence, there must be a finding that Delancey was negligent. In this case, that finding occurred when the trial court ruled in favor of Conestoga on its cross-claim against Appellants. N.T., 11/10/16, at 76. Accordingly, we agree with the trial court that Conestoga's cause of action against Delancey arose on November 10, 2016, with the finding of Delaney's negligence in issuing the title insurance. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶¶ 77, 91–92. Consequently, Conestoga's claim against Hopkins under the Guaranty arose at the same time. **Leedom**, 647 A.2d at 225.

Hopkins signed the Guaranty, not under seal, on April 21, 2004. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶¶ 14, 15. The statute of limitations for a contract not under seal is four years. 42 Pa.C.S. § 5525. Accordingly, Conestoga had to file suit against Hopkins pursuant to the Guaranty within four years of the finding of Delancey's negligence, *i.e.*, on or before November 10, 2020. Conestoga filed its joinder complaint on December 17, 2013, well before the statute of limitations began to run, let alone expire. Thus, we discern no error in the trial court's conclusion that "Conestoga's claims against Hopkins were brought well within the four-year

statute of limitations." Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶ 93.

Appellants' third and final issue challenges the trial court's refusal to reduce the award of $68,887.45 as reasonable attorney's fees and costs to Conestoga on its cross-claim against Appellants. Appellants' Brief at 30; Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶¶ 94–103. Appellants argue that the amount awarded was unreasonable because: (1) Conestoga litigated the dispute for eight years without ascertaining the amount of money in dispute; (2) Conestoga litigated the dispute for eight years only to admit contractual liability at trial; (3) the trial court failed to exclude inadmissible hearsay about attorney charges for individuals who did not testify; (4) the trial court failed to exclude charges related to enforcing the Agency Agreement; and (5) the trial court failed to exclude amounts billed as attorney's fees for work done by a paralegal. Appellants' Brief at 31–39.

"Our standard of review of an award of attorney['s] fees is well settled: we will not disturb a trial court's determinations absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." *Miller v. Miller*, 983 A.2d 736, 743 (Pa. Super. 2009) (internal citation omitted). The default rule in Pennsylvania is that litigants bear responsibility for their own costs and attorney's fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception. *Herd Chiropractic Clinic, P.C.*

***v. State Farm Mut. Auto. Ins. Co.***, 64 A.3d 1058, 1062 (Pa. 2013).[4]  "[T]he interpretation of the terms of a contract is a question of law for which our standard of review is *de novo*, and our scope of review is plenary."  ***McMullen v. Kutz***, 985 A.2d 769, 773 (Pa. 2009) (citation omitted).  Our Supreme Court has held:

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

***Id.*** at 774 (quoting ***In re Estate of LaRocca***, 246 A.2d 337, 339 (Pa. 1968)).

Here, Delancey and Conestoga included a fee-shifting provision in the Agency Agreement.  Agency Agreement, 4/21/04, at ¶ 5.  Following a two-day bench trial on Conestoga's cross-claim for attorney's fees, the trial court entered the following findings of fact:

48. At the assessment of damages phase of the trial, Conestoga presented the testimony of William Parker, Esquire ("Mr. Parker"), in-house counsel for Conestoga.

49. The testimony of Mr. Parker was credible and accepted by the [c]ourt.

---

[4]  This rule is known as the "American Rule."  ***Trizechahn Gateway LLC v. Titus***, 976 A.2d 474, 482–483 (Pa. 2009).

50. Mr. Parker commenced employment with Conestoga in 2009, shortly after this civil action was commenced. He was principally responsible for managing the matter which is the subject of this litigation, including supervising outside counsel working on behalf of Conestoga.

51. Mr. Parker has hired outside counsel to represent Conestoga and its insureds in connection with multiple claims throughout Pennsylvania, and also specifically in Montgomery County, Pennsylvania on multiple occasions. He is familiar with the rates charged by attorneys in the region, which vary based upon their level of experience and familiarity with these types of cases.

52. Mr. Clemm and the firm of Morris and Clemm, P.C. commenced their representation of Conestoga in March, 2013. Thereafter, the name of Mr. Clemm's law firm changed to Morris, Clemm and Wilson, P.C. Thereafter, Mr. Clemm withdrew from that firm and started a new firm known as Clemm and Associates, LLC. Mr. Clemm and the law firms with which he was associated continuously represented Conestoga in this case from March, 2013 to the present.

53. For this claim, Mr. Parker and other principals of Conestoga reviewed, approved of, and paid the bills for legal fees and costs submitted by Mr. Clemm and his associates.

54. Mr. Parker was Mr. Clemm's primary contact at Conestoga, and Mr. Clemm provided Mr. Parker with copies of pleadings, correspondence and other documents generated and/or filed in connection with this case.

55. Mr. Clemm and/or members of his firm also provided Mr. Parker with updates concerning the status of the litigation and had discussions with Mr. Parker concerning strategy to be utilized in this case.

56. At the time that Mr. Clemm and his firm commenced representation of Conestoga in this matter, Mr. Parker negotiated a reduction in Mr. Clemm's customary hourly rate from $400 to $300 per hour.

57. However, in Mr. Clemm's first 5 time entries billed to Conestoga, Mr. Clemm billed his time at $350 per hour for a

total of 12.2 hours and at $375 for a total of 3 hours. That constitutes a total of $632.50 above what Conestoga would have paid had Mr. Clemm charged the negotiated rate of $300 per hour.[1]

> [1] These amounts are calculated from Slip IDs 117960, 118081, 120152, 120984, and 121188 on Trial Exhibit D-9.

58. Joshua Knepp, Esquire, worked as an associate for Mr. Clemm and provided services to Conestoga in connection with this case. Mr. Knepp's time was charged at the rate of $275 per hour, which was an hourly rate approved by Mr. Parker and Conestoga.

59. During the time that Mr. Clemm worked on the case for Conestoga, Katie M. Clemm also worked on the case. After her graduation from law school, but before she was admitted to practice in the [Commonwealth] of Pennsylvania, her time was charged at the rate of $175 per hour, a rate acceptable to Mr. Parker and Conestoga as reflecting a reasonable rate charged by a senior, highly experienced paralegal. After Katie M. Clemm, Esquire was admitted to practice in the Commonwealth of Pennsylvania, her rate remained the same at $175 per hour, which was an hourly rate acceptable to Mr. Parker and Conestoga as reflecting a reasonable rate charged by a young associate with her level of experience.

60. Mr. Clemm testified concerning the services provided by him and his associates in connection with the representation of Conestoga in this case, including preparing and serving various forms of written discovery; reviewing, analyzing and summarizing responses to written discovery which had been served; preparing, filing and serving various pleadings, motions and briefs in support of same; responding to various pleadings, motions and briefs filed by other parties in the case; performing and/or reviewing legal research at various times; identifying, communicating with and preparing various expert witnesses for trial; and preparing for and conducting the trial in this case.

61. The testimony of Mr. Clemm was credible and was accepted by the [c]ourt.

62. After Mr. Clemm entered his appearance for Conestoga in this case on July 15, 2013, there were over 90 docket entries which reflected pleadings, orders and other matters filed in this case which required Mr. Clemm's participation and/or attention.

63. For the period from March 25, 2013 through and including March 31, 2017, Mr. Clemm and the associates who worked with him on this case billed a total of $62,669.95 in attorneys' fees and costs, as reflected on Trial Exhibit D-9.

64. Mr. Clemm and his associates billed additional legal fees of $6,850 to prepare for and conduct the damages phase of the trial which occurred on May 1, 2017 and May 2, 2017.

65. The total legal fees and costs billed by Mr. Clemm and his associates through May 2, 2017 amounted to $69,519.95.

66. Hopkins and Delancey did not produce any fact witnesses or otherwise provide any evidence which challenged the reasonableness and necessity of the attorney's fees and costs billed by Mr. Clemm and his associates in connection with the representation of Conestoga in this case, instead relying entirely on their cross-examination of Mr. Parker and Mr. Clemm.

67. Hopkins and Delancey sought to call Keith Lipman, Esquire, as an expert witness to challenge the reasonableness and necessity of all attorney's fees and costs billed by Mr. Clemm and his associates in connection with the representation of Conestoga in this case.

68. For the last 17 years, Mr. Lipman worked as an information technology consultant seeking to assist law firms (especially large law firms) in work efficiency, cyber security, and practice management.

69. Mr. Lipman practiced law for approximately three years from 1994 through 1997 as a labor relations associate. Mr. Lipman has not practiced law since 1997.

70. Mr. Lipman has never reviewed or analyzed the hourly rates charged by attorneys in Montgomery County, Pennsylvania and specifically is not aware of rates charged by attorneys in

Montgomery County, Pennsylvania, nor is he aware of rates charged by attorneys who defend title insurance companies in cases like the present matter.

71. Mr. Lipman has never conducted an audit of a law firm's bills to assess their reasonableness.

72. Mr. Lipman's office is located in the building owned by Hopkins, and he agreed to provide his testimony gratis as a favor to Hopkins.

73. Hopkins and Delancey asserted that Mr. Lipman's testimony could assist the [c]ourt in identifying instances of block billing. However, Mr. Lipman was not permitted to testify as an expert because he had no specialized knowledge which would reasonably assist the [c]ourt as the trier of fact in this case.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 7–11.

Based on its findings of fact, the trial court entered the following conclusions of law:

101. The hourly rates charged by Mr. Clemm and his associates were consistent with rates charged by other lawyers in Montgomery County, Pennsylvania who provide similar types of legal services in similar types of cases.

102. The legal fees and costs billed by Mr. Clemm and his associates were necessary in order to defend Conestoga against the claims made by Kessock and in order to plead and prove the claims made by Conestoga against Delancey for recovery of attorney's fees and costs incurred by Conestoga.

103. The amount of $69,519.95 billed by Mr. Clemm and his associates is reasonable less the $632.50 Mr. Clemm billed above his negotiated rate of $300 per hour.[3, 4] Delancey is obligated to pay Conestoga the sum of $68,887.45 to reimburse Conestoga for the reasonable attorney's fees and costs incurred by Conestoga in this case.

- 26 -

³ After nitpicking Mr. Clemm's bills in ways not supported by common sense or case law, Delancey asserted that Conestoga should only recover $4,067.25 in attorney's fees. That is, [Appellants] argued that the reasonable rate for a law firm to represent a client for over four years and successfully through trial was only slightly more than $1,000 per year of representation. The [c]ourt need say no more regarding the absurdity of this assertion.

⁴ Delancey asserts that the test laid out in *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1032 (Pa. Super. 2005) is applicable to this case. *Neal* lays out the facts which should be considered when assessing the reasonableness of counsel fees "in a case involving a lawsuit which includes claims under the UTPCPL (the Unfair Trade Practices and Consumer Protection Law)." The factors are: "(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation." The present matter obviously does not fall under the UTPCPL. Moreover, the party who could recover attorney's fees under the UTPCPL would by necessity always be the Plaintiff. Therefore, the fourth factor clearly makes no sense in the context of a defendant requesting attorney's fees under a contractual provision. The third factor is arguably irrelevant as well since the defendant has no control over having been sued. The defendant cannot simply drop a case, even if it deems the amount in controversy to be low. Certainly the defendant could attempt to settle the case with the plaintiff, but the plaintiff could always refuse. Therefore, in the case of an intractable plaintiff, a defendant would be forced to continue to incur attorney's fees no matter what it deemed the amount in controversy to be. Here, [Kessock] asserted that [his] claim was worth more than $1,000,000. Therefore, there is no evidence

that [Kessock], who ultimately did proceed with this case through trial, would have agreed to settle the case for a nominal amount. Notwithstanding the foregoing, to the extent this test is applicable to the case at bar, the [c]ourt determines that the fees requested by Conestoga are reasonable under the elements of the *Neal* test.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 16–17.

On appeal, Appellants complain that Conestoga litigated the dispute for eight years without ascertaining the amount of money in dispute, only to admit contractual liability at trial. Appellants' Brief at 31–33. However, the trial court assessed attorney's fees as of Attorney Clemm's involvement in the case, which began in March of 2013, four years after Kessock filed his lawsuit against Conestoga. N.T., 5/1/17, at 140. During his representation, Attorney Clemm defended Conestoga against Kessock's claim **and** pursued Conestoga's cross-claims against Appellants; both lawsuits arose out of the incomplete title search. *Id.* at 113–114. Thus, we discern no merit to Appellants' first two bases for challenging the trial court's award of attorney's fees to Conestoga.

Appellants next assail the trial court's failure to exclude inadmissible hearsay about attorney charges for individuals who did not testify, *i.e.*, Joshua Knepp ("Attorney Knepp") and Katie Clemm. Appellants' Brief at 35. Specifically, Appellants contend that the "compilation of individual time entries spanning the four years that the Clemm Firm handled this case . . . are hearsay within hearsay," proven for the truth of the matter asserted. *Id.* (citing Pa.R.E. 801). Relying on the "recorded recollections" hearsay

J-S31004-18

exception,[5] Appellants argue that, because Attorney Knepp and Katie Clemm did not testify at trial, Conestoga failed to prove all charges related to their time entries. *Id.* at 35–36 (citing Pa.R.E. 8803.1(3)). Therefore, Appellants conclude, the award of attorney's fees should be reduced by the amount of Attorney Knepp's and Katie Clemm's billings. *Id.* at 36.

In response, Conestoga argues for admissibility of the invoices under an exception to the hearsay rule known as "Records of a Regularly Conducted

_____

[5] This hearsay exception provides as follows:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> * * *
>
> **(3) Recorded Recollection of Declarant-Witness.** A memorandum or record made or adopted by a declarant-witness that:
>
> * * *
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.
>
> If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1(3).

Activity." Conestoga's Brief at 26 (citing Pa.R.E. 803(6)).[6] According to

Conestoga, Attorney Clemm was "an authenticating witness" who provided

"sufficient information relating to the preparation and maintenance of the

records to justify a presumption of trustworthiness for the business records of

a company." *Id.* (citing *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 401

(Pa. Super. 2015)).

Upon review of the record, we observe that, at trial, Appellants objected

to the admission of any evidence related to Attorney Knepp's time; however,

they did not object to evidence related to Katie Clemm's time. N.T., 5/1/17,

at 40–42. Therefore, Appellants' challenge to the admissibility of evidence of

---

[6] Rule 803(6) permits the admission of a recorded act, event or condition if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Katie Clemm's time is waived. **See Folger v. Dugan**, 876 A.2d 1049 (Pa. Super. 2005) (challenge to admissibility based upon improper authentication is waived where party failed to object on that basis at trial).

As to the evidence of Attorney Knepp's time, we conclude that Attorney Clemm proved the criteria for admission of his firm's invoices under Pa.R.E. 803(6). The record confirms that Attorney Clemm was president of the law firms that represented Conestoga. N.T., 5/1/17, at 116. His associate, Attorney Knepp, used the Time Slips program for recording time "every six minutes of every hour of every day that they worked on a case." **Id.** at 115, 131. Attorney Clemm supervised Attorney Knepp's work on this case, and he reviewed Attorney Knepp's time records on a monthly basis. **Id.** at 116, 134– 135, 142–143. The records were then submitted to the bookkeeper who generated the worksheets. **Id.** at 115, 137. Once Attorney Knepp reviewed the worksheets for accuracy, the bookkeeper generated invoices and sent them to the client. **Id.** at 116, 135, 137–138. Nothing in the record indicates a lack of trustworthiness in the source of information or other circumstances. Pa.R.E. 803(6)(E). Moreover, the trial court made a credibility determination as to Attorney Clemm's testimony, and we detect no reason to disturb it. Decision with Findings of Fact and Conclusions of Law, 8/17/17, at ¶ 61. Based on the foregoing, we discern no merit to Appellants' claims that the trial court abused its discretion in admitting all of the attorney invoices in support of Conestoga's claim for attorney's fees.

Appellants further assail the trial court's failure to exclude charges related to enforcing the Agency Agreement. Appellants' Brief at 37. We dispose of this issue by adopting as our own the well-reasoned analysis of the trial court:

> [2] Delancey argues that attorney's fees attributable to enforcement of the Agency Agreement itself should be interpreted as excluded from [paragraph 5]. The [c]ourt, however, is not persuaded. First, the plain language of the contract does not so limit the recovery of attorney's fees. Fees related to enforcement of the Agency Agreement by definition "result from" Delancey and its agents' negligence. But for Delancey's agents' negligence, Conestoga would not have incurred legal fees enforcing its agreement with Delancey.
>
> Delancey cites only two cases to buttress their argument, *Twnshp of Millcreek v. Angela Cres Trust of June 25*, 142 A.3d 98, 956 (Pa. Commwlth. 2016); *Neal v. Bavarian Motors, Inc.*, 882 A,2d 1022, 1032 (Pa. Super. 2005). However, both cases are readily distinguishable from the present matter. These cases relate to statutory attorney's fees as opposed to attorney's fees provided for in a contract. This is important, because in both cases, the court held that the attorney's fees sought were not actually provided for in each statute. In *Twnshp of Millcreek*, attorney's fees were not awarded because the bills submitted for reimbursement were pursuant to a proceeding for which reimbursement of attorney's fees was not provided for by statute. *Twnshp of Millcreek v. Angela Cres Trust of June 25*, 142 A.3d 948, 956 (Pa. Commwlth. 2016). Similarly, in *Neal*, attorney's fees were not awarded because they were sought under a cause of action for which reimbursement of attorney's fees was not provided for by statute. *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1032 (Pa. Super. 2005). In short, Delancey has presented no case law which would

> cause this [c]ourt to look past the clear wording of
> the Agency Agreement.

Decision with Findings of Fact and Conclusions of Law, 8/17/17, at 16 n.2.

Finally, Appellants complain that the trial court failed to exclude amounts billed as attorney's fees for work done by a paralegal.  Appellants' Brief at 39.  Appellants contend as follows:

> Conestoga expended $3,412.50 for the activities of Katie McKenzie Clemm between March 26, 2015 and October 13, 2015. Ms. Clemm's time was charged at an hourly rate of $175.00.  Ms. Clemm's name appears under the title of "Lawyer" at the header of each description.
>
> However, Ms. Clemm was not admitted to the practice of law in Pennsylvania until October 19, 2015.  After Ms. Clemm's admission to the bar of Pennsylvania, her time was charged at the same hourly rate of $175.00.
>
> The entire amount of $3,412.50 falsely billed as attorney time for an individual not licensed to practice law in Pennsylvania should be deducted from amounts attributable to [Appellants].

Appellants' Brief at 39 (citations to reproduced record omitted).

Conestoga counters that Ms. Clemm's paralegal rate of $175 per hour "reflect[ed] a reasonable rate charged by a senior, highly experienced paralegal.  After Ms. Clemm was admitted to practice in the Commonwealth of Pennsylvania, her rate remained at the same rate of $175 per hour which reflected a reasonable rate charged by a young associate with her level of experience."  Conestoga's Brief at 31 (citing N.T., 5/1/17, at 117).

The crux of Appellants' argument is that Ms. Clemm's status was misrepresented under the heading of "Lawyer" while she was still a paralegal.

N.T., 5/1/17, at Exhibit D-9. In light of the record before us, we consider this argument disingenuous. At the trial on damages, William Parker, Conestoga's Vice President of Claims and Underwriting, testified that his negotiations with Attorney Clemm's firm for representation "took into account whether it's a billing for a paralegal, whether it's a billing for an attorney." *Id.* at 72–73. He further testified that part of Conestoga's original memorandum of understanding with Clemm and Associates "was that [Ms. Clemm] would be working on the case as well at the hourly rate of [$]175." *Id.* at 73. Conestoga considered the bills received from Attorney Clemm's firm to be fair and reasonable. *Id.* at 74.

> Additionally, Attorney Clemm described Ms. Clemm's status as follows:
>
> And also [Ms. Clemm] working at the firm as well. I think [she] started working on the file in March of 2015. And in my estimation, it was appropriate to bill [her] out at $175 an hour at that time. Because as a third year law student you were far more experienced than any paralegal would have been under similar circumstances. So the $175 an hour was a rate which reflected that.
>
> And after [she] passed the bar, I think in October of 2015, then I elected not to increase [her] rate because [she was] being at that point slightly underpaid as a first year associate in terms of the hourly rate being charged. But I thought it was appropriate to continue that particular rate, based upon [her] age, experience, et cetera. And that was something which was approved by the company, it was understood by the company and agreed to by the company.

N.T., 5/1/17, at 117–118. As observed above, the trial court considered Attorney Clemm's testimony to be credible, and we detect no basis on which to overrule its determination. Decision with Findings of Fact and Conclusions

of Law, 8/17/17, at ¶ 61. Therefore, we discern no merit to Appellants' final basis for challenging the award of attorney's fees.

In sum, Appellants have failed to persuade us that the trial court erred in finding in favor of Conestoga on its cross-claim for attorney's fees pursuant to the Agency Agreement and the Guaranty. Therefore, we affirm the entry of judgment against Appellants.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/18